In re INSTRUMENT SALES & SERVICE, INC.,

Kenneth HOLT, Trustee, Plaintiff,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION Defendant.

Bankruptcy No. 5–83–00002.
Adv. No. 5–86–0236.

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

July 7, 1987.

---

Corey W. Haugland, El Paso, Tex., for debtor, Instrument Sales & Service, Inc.

Turpin, Smith, Dyers, Saxe & Mac-Donald, Midland, Tex., for plaintiff, Kenneth Holt, trustee.

Christie M. Anderson, Midland, Tex., for defendant, Federal Deposit Ins. Corp.

## MEMORANDUM OPINION

R. GLEN AYERS, Chief Judge.

This Court has jurisdiction under 28 U.S.C. § 1334 and § 157(b) of this core proceeding to determine whether the transfer alleged was preferential and whether § 550 applies to prevent recovery of the value of the alleged preference from the Federal Deposit Insurance Corporation (hereinafter "FDIC").

On October 20, 1981, Instrument Sales & Services, Inc. (hereinafter "Debtor"), executed a security agreement in favor of the National Bank of Odessa granting the bank a security interest in the Debtor's inventory, raw materials, work in process, or materials used or consumed in Debtor's business, whether now owned or hereafter acquired, whether in the possession of the Debtor, warehouseman, bailee, or any other person. Two days later, on October 22, 1982, the Debtor executed a note to the National Bank of Odessa (hereinafter "Bank"), in the amount of $625,685.17. The Bank, on November 5, 1982, a date more than ten days after execution of the note, properly perfected its security interest by filing with the Secretary of State.

Less than ninety days later, the Debtor filed its bankruptcy petition under Chapter 11.

Subsequent to the filing of the bankruptcy petition, in September of 1983, the Bank failed, and the FDIC was appointed Receiver. The FDIC as receiver then transferred the note and security agreement to the FDIC in its corporate capacity.

In 1986, the Debtor's case was converted to Chapter 7. The Trustee appointed to oversee the Chapter 7 case initiated this adversary proceeding. The FDIC eventually filed a motion for relief from stay to foreclose its security interest on the property. An agreed order was entered between the Trustee and the FDIC allowing the Trustee to sell the property in question and to retain the proceeds pending determination of the preference issue.

## CONCLUSIONS OF LAW

According to the undisputed facts set forth in the Joint Pretrial Order and in the briefs of both parties, it is clear that the Bank properly perfected its security interest in the collateral by filing a financing statement with the Secretary of State on November 5, 1982, as required by the Uniform Commercial Code (hereinafter "UCC") § 9–302. Thus, under § 9–301, the Bank's lien was superior to the lien of a debtor-in-possession or trustee when the Debtor filed bankruptcy on January 3, 1983.

However, the parties do not contest that the lien was also a preferential transfer under 11 U.S.C. § 547. The delay in perfecting the transaction, perfection occurring after the ten days permitted by § 547, made the transaction one for an antecedent debt under § 547(b)(2). All of the other elements of § 547(b) are clearly present, and § 547(c) does not save the transaction.

The trustee has argued that the UCC provisions join the provisions of § 547 and result in the trustee's claim being superior to that of the FDIC. The trustee argues that the FDIC's lien was not perfected. The trustee's argument may be summarized as follows:

1. The term "perfected" is defined in Official Comment One to § 9–301: "the term 'perfected' is used to describe a security interest in personal property which cannot be defeated in insolvency proceedings."

2. "Insolvency proceedings" are specifically defined in § 1–201(22) of the UCC as proceedings intended to liquidate or rehabilitate the estate of the person involved.

3. Since the lien of the Bank was perfected more than 10 days after the note was signed and within 90 days of the filing of the petition, it constituted a voidable preference. *Davis v. Ford Motor Credit Co.*, 734 F.2d 604 (11th Cir.1984); *Arnett v. Security Mutual Finance Corp.*, 731 F.2d 358 (6th Cir.1984); *Matter of Vance*, 721 F.2d 259 (9th Cir.1983).

4. Therefore, the FDIC's lien cannot survive bankruptcy and was thus "unperfected" under § 9–301.

This argument mixes apples and oranges and is completely beside the point. The lien held by the FDIC was perfected as the term is used in UCC § 9–301. True, the lien will not survive bankruptcy under § 547, but § 547 applies *only because the lien was perfected* (i.e. without perfection, there would have been no transfer). Put another way UCC § 9–301 and accompanying Official Comment One refer to the trustee's avoidance power contained in § 544; UCC § 9–301 does not apply to situations under § 547.

The trustee's argument is similar to the argument raised in the line of cases culminating in *Constance v. Harvey*, 215 F.2d 571 (2d Cir.1954), *cert. denied*, 348 U.S. 913, 75 S.Ct. 294, 99 L.Ed. 716 (1955). These were the "gap creditor" cases. In those cases, there was a delay in perfection. In the "gap," a hypothetical creditor could have gotten a lien with a priority higher than that of the subsequently perfected lien. The trustee could assert the power to assume that hypothetical, gap creditor position. The "gap creditor" theory was finally rejected by the Supreme Court in *Lewis v. Manufacturers National Bank*, 364 U.S. 603, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961). The 1978 Bankruptcy Code also rejected that line of cases. *See* H.R.

Rep. No. 95–595, 95th Cong., 1st Sess. 370–71 (1977), U.S.Code Cong. & Admin.News 1978, p. 5963; S.Rep. No. 95–989, 95th Cong., 2d Sess. 86 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. The present statute, § 544, only applies when, as of the date of the petition, there was no perfection.

As stated above, the parties agree that a preferential transfer occurred. Therefore, if this was simply an action against the Bank, the trustee would prevail. However, the FDIC, in its corporate capacity, raises the § 550 as a defense to recovery of the value of the preference:

(a) ... the trustee may recover, for the benefit of the estate, the property transferred, or, if the Court so orders, the value of such property, from—

(1) the initial transferee of such transfer; or

(2) any immediate or mediate transferee of such transferee.

(b) The trustee may not recover under section (a)(2) of this section from—

(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of avoidability of the transfer voided;

(2) any immediate or mediate good faith transferee of such transferee.

The legislative history for § 550 "ennuciates the separation between the concepts of avoiding the transfer and recovering from the transferee." H.R.Rep. No. 595, 95th Cong., 1st Sess. 375–76 (1977), U.S.Code Cong. & Admin.News 1978, p. 6331; S.Rep. No. 95–989, 95th Cong., 2d Sess. 90 (1978), U.S.Code Cong. & Admin.News 1978, p. 5876. Even after it is established that a transfer is avoidable, the Court must consider the remedy available to a trustee, and for this the Court must look to § 550 of the Bankruptcy Code. *See, Smith v. Mixon*, 788 F.2d 229, 231 (4th Cir.1986); *Matter of Fidelity Electronics, Ltd., Inc.*, 52 B.R. 475, 478 (S.D.Fla.1985).

The FDIC certainly qualifies in its corporate capacity as a "transferee that takes for value ... in good faith without knowl-

edge of voidability of the transfer avoided." 11 U.S.C. § 550(b)(1). Because the FDIC operates in two separate capacities, a short explanation of the functioning and legal status of the FDIC may be helpful to an understanding of its role as transferee.

When the office of the Comptroller of Currency declares a bank to be insolvent, it appoints the FDIC as Receiver of the failed bank. 12 U.S.C. § 1821(c) § 1822. One option of the FDIC is simply to liquidate the assets of the failed bank as Receiver and pay the depositors the insured amount of their deposits. 12 U.S.C. § 1821(d). The FDIC has another option which is to enter into a purchase and assumption transaction whereby the highest bidding bank can purchase designated assets and assume certain liabilities of the failed bank. 12 U.S.C. § 1823.

To effect the purchase and assumption transaction, speed and secrecy in the coordination of a complicated series of transactions are necessary. The FDIC as Receiver then sells the acceptable assets of the failed bank to the assuming bank, which assumes the failed bank's deposit liabilities. The FDIC as Receiver is given credit for the assets, and it also obtains a premium from the assuming bank of the "going concern" value of the assets assumed. The FDIC, in its corporate capacity then participates in the closing and the reopening of the bank which occurs in a very short period of time.

Generally, the value of the assets purchased by the assuming bank and the premium it pays is considerably less than the amount of liabilities that it assumes. Consequently, additional cash must be transferred to the assuming bank to balance the acquired assets and assumed deposit liabilities. To fund this transfer, the FDIC as Receiver sells to the FDIC in its corporate capacity the remaining assets of the failed bank which the assuming bank declined to purchase. See, FDIC v. Merchants National Bank, 725 F.2d 634, 637–38 (11th Cir.1984).

As Receiver of the Midland Bank, the FDIC alleges that it became the transferee of the liabilities and assets of the Bank. This is a debatable question. See, 12 U.S. C. § 1821(g), which speaks in terms of subrogation. Pursuant to a purchase and assumption agreement approved by the United States District Court and pursuant to the legislative framework established by Congress as described above, the FDIC corporate arm then purchased certain assets from the FDIC as Receiver. Among the assets purchased was the debt secured by the lien the Debtor now seeks to avoid. The corporate FDIC is clearly "immediate or mediate" transferee of the Bank.

It is also acknowledged by the plaintiff that the corporate FDIC is at least presumed to be a good faith purchaser for value under applicable federal common law when it purchases the assets of a failed bank. Gunter v. Hutcheson, 674 F.2d 862 (11th Cir.1982); FDIC v. Wood, 758 F.2d 156 (6th Cir.1985). As to the specific question of whether FDIC "takes with knowledge," the Court in Wood, citing Gilman v. FDIC, 660 F.2d 688 (6th Cir.1981) stated:

> The FDIC is under no duty, in either of its capacities, to examine the assets of a failed bank before it agrees to execute a purchase and assumption transaction. The FDIC cannot, therefore, be charged with knowledge of a defense merely because that information could be found in the bank's files. Furthermore, actual knowledge must be shown as of the date the FDIC entered into the purchase and assumption agreement. In this case, defendant's assertion that the FDIC had knowledge of the defense was based only on the fact that an examination of the bank records should have put the FDIC on notice. That allegation is not sufficient to overcome the presumption that the FDIC had no knowledge of any defenses against it.

FDIC v. Wood, 758 F.2d 156, 162 (6th Cir. 1985).

The requirement of § 550 that a transferee take "without knowledge of the voidability of the transfer" would appear to be redundant, as it adds nothing to the requirement that the transferee take in good faith. On this point, 4 Collier on Bank-

*ruptcy*, § 550.3, p. 550–10 (15th ed. 1985) states:

> To be protected under Section 550(b)(1), a subsequent transferee must take "without knowledge of the voidability of the transfer avoided." Neither the Code nor the legislative history interprets this standard. The language appears to be derived from Section 4–609(b)(1) of the Commission's bill, and was included as surplusage to illustrate a transferee that could not be in good faith.

While this presumption may be rebuttable, the Trustee has offered no evidence. Instead, the Trustee asserts that the burden of showing good faith, value, and lack of knowledge is on the FDIC. In the pleadings, including an amended complaint filed after the FDIC asserted § 550 in its answer, the Trustee has totally ignored the § 550 issue. As noted above, the federal common law seems to establish a presumption which benefits the corporate FDIC. Moreover, the case law clearly establishes, when § 550 is asserted, that the trustee bears the burden of at least asserting that the transferee is not a transferee protected by § 550. *See In re Jorges Carpet Mills, Inc.*, 50 B.R. 84, 85 (Bankr.E.D.Tenn.1985). By not addressing the § 550 issue, the Trustee has failed in his burden.

## CONCLUSION

The corporate FDIC is clearly protected by § 550; the preference may not be recovered and the lien held by the corporate FDIC is valid. The preference did occur however, and would be avoidable as to the Bank. The trustee obviously has a preference claim against the Bank. A receiver, even one with the powers of the FDIC, is ordinarily substituted for or subrogated to the rights of its predecessor. The FDIC as receiver does have limited protection under 12 U.S.C. § 1822(c) from unrecorded claims in deposits, but that provision is not applicable. There being no particular statutory protection, the FDIC as receiver would therefore appear to merely stand in the shoes of the Bank. *See Tosco Corp. v.*

*FDIC*, 723 F.2d 1242 (6th Cir.1983). Still, the FDIC asserts that, as Receiver, it is protected by § 550, and the Court agrees. Section 550 requires a "transfer."

The provisions of 12 U.S.C. §§ 1821 and 1822 do not appear to create a "transfer" from the failed Bank to the FDIC as Receiver but rather a substitution of the FDIC as Receiver for the failed Bank. Such a transaction is therefore not a "transfer" under Title 12 and § 550 of the Bankruptcy Code and will not protect the FDIC as Receiver unless the transaction is a "transfer" under Title 11. Section 101(50) of the Bankruptcy Code does appear to define "transfer" so broadly as to encompass transfers to all receivers:

> (50) "transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption....

The legislative history of the original definition, as enacted in 1978, makes it crystal clear that even a change of custody is a "transfer":

> Under this definition, a transfer of an interest in property is a transfer, including a transfer of possession, custody or control even if there is no transfer of title, because possession, custody, and control are interests in property.

H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 314 (1977), U.S.Code Cong. & Admin.News 1978, p. 6271; S.Rep. No. 95–598, 95th Cong.2d Sess. 27 (1978), U.S.Code Cong. & Admin.News 1978, p. 5813.

Because the FDIC as Receiver is a transferee, § 550 applies to protect the FDIC acting in that capacity. As the trustee has offered no evidence of lack of good faith or absence of value, or, conversely, the presence of actual knowledge,[1] the FDIC must be insulated by § 550 in both its receiver and corporate capacities. *See* discussion

---

1. Whether a receiver, either the FDIC or any other receiver, ever gives value is a legitimate question. However, the Court cannot reach that issue on the pleadings filed with the Court.

above and *see, In re Jorges Carpet Mills, Inc.,* 50 B.R. at 85.