**In re NORDIC VILLAGE, INC., Debtor.**

**INTERNAL REVENUE SERVICE,
Plaintiff–Appellant,**

v.

**NORDIC VILLAGE, INC., David O. Simon, Trustee, Defendants–Appellees.**

**No. 89–3656.**

United States Court of Appeals,
Sixth Circuit.

Argued May 3, 1990.

Decided Oct. 4, 1990.

---

Charles M. Greene, U.S. Dept. of Justice, Tax Div., Washington, D.C., William J. Kopp, Asst. U.S. Atty., Cleveland, Ohio, Gary R. Allen, Acting Chief, Murray S. Horwitz, Gary D. Gray (argued), U.S. Dept. of Justice, Appellate Section, Tax Div., Washington, D.C., for plaintiff-appellant.

David O. Simon, Selker, Furber & Spotts, Michael D. Zaverton (argued), Dettelbach, Sicherman & Baumgart, Cleveland, Ohio, for defendants-appellees.

Before KENNEDY and WELLFORD, Circuit Judges; and JOINER, Senior District Judge.*

JOINER, Senior District Judge.

The Internal Revenue Service (IRS) appeals from the district court's determination that it is liable to the trustee in bankruptcy of defendant, Nordic Village, Inc. (Nordic), for a voidable transfer under section 549 of the Bankruptcy Code, 11 U.S.C. section 549. The facts are stipulated. Nordic filed a Chapter 11 petition on March 27, 1984, pursuant to which Nordic acted as debtor-in-possession. On July 18, 1984, Josef Lah, an officer and shareholder of Nordic (then doing business as Swiss Haus, Inc.), drew a $26,000 counter-check on the corporate account made payable to the bank. The bank, in turn, issued several cashier's checks to Lah. The cashier's check at issue here, for $20,000, was made payable to the IRS.

The check bore the notation "REMITTER: SWISS HAUS, INC." At some point, a line was drawn through this notation, although it remains clearly legible. Lah delivered the cashier's check to the

---

* The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation.

IRS, with instructions that it be credited against the outstanding tax liabilities of Josef Lah, doing business as Josef's Hair Design. The IRS credited Lah's account accordingly.

On August 10, 1984, a trustee in bankruptcy was appointed for Nordic. The trustee subsequently initiated a proceeding to recover several unauthorized post-petition transfers, including the transfer to the IRS. The bankruptcy court held that the transfer was voidable under section 549 of the Bankruptcy Code, and that the IRS was the initial transferee of the debtor under section 550 of the Bankruptcy Code, 11 U.S.C. section 550 (1979 & Supp.1990), because Lah was acting as the agent of the debtor when he withdrew the funds from the corporate account. The district court affirmed, but as to the latter issue, it also held in the alternative that the IRS was an immediate transferee, and knew or should have known that the transfer was voidable as a consequence of the notation "REMITTER: SWISS HAUS, INC." We now affirm.

### I.

This case presents two issues for review. The first issue is the jurisdictional question of whether a federal agency has sovereign immunity under the Bankruptcy Code. The IRS relies upon *Hoffman v. Connecticut Department of Income Maintenance,* — U.S. ——, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989), in which the Supreme Court held that the sovereign immunity provision of the Bankruptcy Code, 11 U.S.C. section 106 (1979), does not waive the immunity of the states as to money judgments.[1] For three reasons, this reliance is misplaced.

First, there is no controlling analysis of the statute in *Hoffman.* Four Justices agreed that section 106 did not waive the immunity of states, in an opinion by Justice White, and in an opinion written by Justice Marshall, an equal number of Justices held to the contrary. The deciding vote in the case was delivered by Justice Scalia, concurring in the judgment on other grounds, and explicitly stating that he did not concur in the theory expanded upon in the opinion of Justice White. Thus, the most that can be said for the status of the *Hoffman* decision as precedent is that each of two theories received equal support.

Second, the holding in *Hoffman* is distinguishable because it dealt with the immunity of states under the eleventh amendment. The White opinion did not address whether Congress intended to waive the immunity of the United States, but instead decided the case by application of the rule that a congressional abrogation of the sovereign immunity of the states will not be found minus an explicit statement of Congress's intent to do so on the face of the statute. 109 S.Ct. at 2822. Here, we are dealing with a congressional waiver of the sovereign immunity of the United States.

Third, the legislative history supports the plain language of section 106 and the reasoning of the Marshall opinion in *Hoffman,* which pointed out that it was the intention of Congress to waive sovereign immunity in cases like *Hoffman,* and like the case presently before us. The only clear parsing of the statute having any application to this case is done by Justice Marshall.

This case also presents the issue of the liability of a transferee in the circumstances surrounding the IRS's receipt of Lah's check. The district court was correct in holding, alternatively, against the IRS's claim that the funds were taken in good faith and without knowledge that they were funds belonging to Swiss Haus, Inc., the transfer of which was voidable.

### II. Waiver of Sovereign Immunity

#### A. *Intent of Congress*

■ The jurisdiction of the court turns on the waiver by Congress of the IRS's sovereign immunity. Two provisions of the Bankruptcy Code are relevant. Section 550 provides, in part:

---

1. We note that certain other courts of appeals have found, as the IRS argues here, that *Hoffman* is controlling precedent on the issue of waiver of the federal sovereign immunity in bankruptcy actions. *See, e.g., Small Business Admin. v. Rinehart,* 887 F.2d 165 (8th Cir.1989); *Tennessee v. Arizona State Retirement Sys.,* 873 F.2d 1400 (11th Cir.1989).

(a) Except as otherwise provided, in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee or such initial transferee.

(b) The trustee may not recover under section (a)(2) of this section from—

(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided....

11 U.S.C. § 550. Section 106 of the Bankruptcy Code provides:

(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

(b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

(c) Except as provided in subsection (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and

(2) a determination by the court of an issue arising under such a provision binds governmental units.

11 U.S.C. § 106. Section 106 abolishes the defense of sovereign immunity in cases where the claim is made by the trustee pursuant to a provision of the Code that contains any of the words "creditor," "entity," or "governmental unit." Section 550 is one of these sections. It specifically authorizes the Trustee to avoid the transfer and to recover the property or its value from the "entity" for whose benefit the transfer was made.

Sections 550 and 106 authorize suits by the trustee to recover a transfer of the type involved here from the IRS regardless of sovereign immunity. In this case, the IRS received the "benefit" of the check. The IRS is a "governmental unit" and an "entity," thus, the language of the statute in this case clearly waives the governmental immunity.

Section 106 is a straight-forward and specific waiver of sovereign immunity as it relates to federal governmental units. There is nothing in the provision suggesting that it is limited to injunctive or declaratory relief. The terms of the waiver take us to any provision of the Code using the trigger words. The meaning could not be clearer.

The legislative history of the Bankruptcy Code supports a plain-language reading of section 106.[2] The original draft of the Bankruptcy Code submitted by the Commission on the Bankruptcy Laws of the United States proposed the following waiver of sovereign immunity:

All provisions of the Act shall apply to the United States and to every department, agency and instrumentality thereof, and to every state and every subdivision thereof except where otherwise specifically provided. This section does not render any branch or unit of the government eligible for relief as a petitioner except as provided in Chapter VIII, or subject to relief as a debtor upon an involuntary petition.

Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc. No. 93–137, 93d Cong., 1st Sess., Pt. II, at 1 (1973) (*reprinted in* COLLIER ON BANKRUPTCY, App. 2, § 1 (15th ed.1984)).

---

**2.** The opinion in *Small Business Administration v. Rinehart*, 887 F.2d 165 (8th Cir.1989), holding that the statute does not waive sovereign immunity as to punitive damages, does not consider the legislative history. It assumes that *Hoffman* applies to the United States and as such it is suspect as authority.

The original House and Senate versions of current section 106 were identical and far narrower in scope, providing as follows:

(a) A governmental unit that files a proof of claim under section 501 of this title is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

(b) There shall be offset against an allowed claim or interest of a governmental unit for which such governmental unit filed a proof of claim or interest under section 501 of this title any claim against such governmental unit that is property of the estate.

H.R. 8200, 95th Cong., 1st Sess. 324 (1977); S. 2266, 95th Cong., 2d Sess. 313 (1978) (*reprinted in* COLLIER ON BANKRUPTCY, App. 3, §§ III, VII (15th ed. 1984)). The committee reports which accompanied this provision were also identical and indicative of the narrowness of the proposed provision. They stated in pertinent part:

Section 106 provides for a limited waiver of sovereign immunity in bankruptcy cases. Though Congress has the power to waive sovereign immunity for the federal government completely in bankruptcy cases, the policy followed here is designed to achieve approximately the same result that would prevail outside of bankruptcy. Congress does not, however, have the power to waive sovereign immunity completely with respect to claims of bankruptcy estate [sic] against a State, though it may exercise its bankruptcy power through the supremacy clause to prevent or prohibit a State action that is contrary to bankruptcy policy.

. . . .

Though this subsection creates a partial waiver of immunity when the governmental unit files a proof of claim, it does not waive immunity if the debtor or trustee, and not the governmental unit, files proof of a governmental unit's claim under proposed 11 U.S.C. § 501(c).

This section does not confer sovereign immunity on any governmental unit that does not already have immunity. It simply recognizes any immunity that exists and prescribes the proper treatment of claims by and against the sovereign.

H.R.Rep. 595, 95th Cong., 1st Sess. 317 (1977); S.Rep. 989, 95th Cong., 2d Sess. 29–30 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5815, 5816, 6274 (*reprinted in* COLLIER ON BANKRUPTCY, App. 2, § II; App. 3, § V (15th ed.1984)).

Subsequently, the two identical proposed provisions on sovereign immunity, H.R. 8200 and S. 2266, were sent to the Conference Committee where sections 106(a) and 106(b) were reworded and where section 106(c) made its initial and permanent appearance. Although the Conference Committee did not issue a report, the floor managers of the legislation read into the Congressional Record identical statements explaining the Conference Committee's work. The statement on section 106(c) provided as follows:

Section 106(c) relating to sovereign immunity is new. The provision indicates that the use of the term "creditor," "entity," or "governmental unit" in Title 11 applies to governmental units notwithstanding any assertion of sovereign immunity and that an order of the court binds governmental units. The provision is included to comply with the requirements in case law that an express waiver of sovereign immunity is required in order to be effective. Section 106(c) codifies *In re Gwilliam*, 519 F.2d 407 (9th Cir.1975) and *In re Dolard*, 519 F.2d 282 (9th Cir.1975), permitting the bankruptcy court to determine the amount and dischargeability of tax liabilities owing by the debtor or the estate prior to or during the bankruptcy case whether or not the governmental unit to which such taxes are owed files a proof of claim. Except as provided in sections 106(a) and 106(b), subsection (c) is not limited to these issues, but permits a bankruptcy court to bind governmental units on other matters as well. For example, section 106(c) permits a trustee or debtor-in-possession to assert avoiding powers under

Title 11 against a governmental unit; contrary language in the House Report to H.R. 8200 is thereby overruled.

124 Cong.Rec. H11091 (Sept. 28, 1978) (comments of Mr. Edwards of California) (*reprinted in* COLLIER ON BANKRUPTCY, App. 3, § IX, at IX–90 (15th ed. 1984)); § S17307 (Oct. 6, 1978) (comments of Mr. DeConcini of Arizona) (*reprinted in* COLLIER ON BANKRUPTCY, App. 3, § X, at X–16 (15th ed. 1984)).

B. *Hoffman*

*Hoffman* is not precedent for this case. The Justices joining in the White opinion based their conclusion on an eleventh amendment analysis, holding that the eleventh amendment immunity of states was not breached by the language of the waiver provision. These Justices did not examine the intent of Congress as to federal agencies like the IRS. They did not examine the legislative history at all. In fact, they did not decide this case. The judgment in *Hoffman* was reached only because Justice Scalia would hold, not that Congress did *not* abrogate the states' eleventh amendment immunity, but that it does not have the power to do so. Justice O'Connor agreed.

The opinion of the other four Justices supports the analysis of this court in this case. Justice Marshall, joined by Justices Brennan, Blackmun, and Stevens, dealt squarely with the language of section 106 and found it sufficiently broad and compelling to overcome the immunity which the eleventh amendment grants to the states. They explicitly rejected the conclusion of the other four Justices that the statute would permit suits only for injunctive and declaratory relief.

*Hoffman* is authority for the fact that the states cannot be sued under the Bankruptcy Code due to a five-Justice combination of two theories, one finding no authority in Congress to waive the sovereign immunity of states, and the other holding that the Bankruptcy Code's waiver provision was not intended to waive the sovereign immunity of states. *Hoffman* does not establish that the Act was not broad enough or specific enough to waive immunity. Justice Scalia, who cast the tie-breaking vote, did not parse the statute, because the intent of Congress was irrelevant under his analysis. The four Justices joining the Marshall opinion held that the provision is sufficiently broad and specific to permit suits against the states. In sum, the case cannot be used to support a claim that Congress has not waived the governmental immunity of the United States, absent the strictures of the eleventh amendment. In a case such as the one presently before the court, the arguments of Justice Marshall have equal force with the arguments of Justice White, and the lower courts must make independent judgments as to whether Congress intended, by the Bankruptcy Act, to waive the immunity of federal agencies, in this case, the IRS.

The foregoing discussion highlights the features which distinguish the *Hoffman* case from the case at bar. In this case, the issues do not involve the eleventh amendment, but simply raise the intent of Congress to waive sovereign immunity regarding claims against the IRS. These two cases are very different and involve different burdens and analyses.

The White opinion in *Hoffman*, urged upon us by the IRS, emphasized the heavy burden on a party asserting waiver of the eleventh amendment: "[T]o abrogate the States' Eleventh Amendment immunity ... Congress must make its intention 'unmistakably clear in the language of the statute.'" *Hoffman*, 109 S.Ct. at 2822 (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985)). Addressing the probative value of the legislative history, the four Justices held that "'[l]egislative history generally will be irrelevant to a judicial inquiry into whether Congress intended to abrogate the Eleventh Amendment.'" *Hoffman*, 109 S.Ct. at 2824. That holding is inapplicable to this case. This is a simple case involving the construction of language enacted by Congress, not a constitutional amendment relating to a fundamental concept of federalism. We do not have before us in this case issues relating to states' rights and central power and the various

doctrines that have been developed to prevent overreaching by the federal government. The *Hoffman* case involves different values and thus, the analysis of that case was necessarily different than that called for here.

While it is true that our reading of section 106 will result in different meanings depending upon whether it is being applied to a state or federal governmental unit, different meanings are an inevitable result of applying two different methods of construction, one dealing with a constitutional provision protecting our federal system, and the other simply determining the will of Congress to permit the federal government to be sued. The plaintiff's argument erroneously assumes that the *Hoffman* Court's holding that the states are immune to monetary recoveries was reached by the sole and inevitable construction of the provision. The *Hoffman* Court itself did not offer a single reading, but evenly divided between two. The more pertinent argument to the present case is that of the Marshall opinion.

In summary, the statute, in clear and explicit terms, prevents the IRS from asserting the defense of sovereign immunity. This is supported by the legislative history, as noted by the Marshall opinion in *Hoffman*. Having resolved the jurisdictional issue, we now turn to the merits of the trustee's recovery.

### III. Right of Trustee to Recover

Section 549 of the Bankruptcy Code provides that the trustee may avoid a transfer not authorized by any provision of the Code, that occurs after the commencement of the case. In this case, the transfer was unauthorized, and all events took place after the filing of the bankruptcy action. Section 550(a) of the Bankruptcy Code provides that when, as here, the transfer is voidable, the trustee may recover for the

benefit of the estate the property transferred or its value. The trustee may recover from the initial transferee, the entity for whose benefit the transfer was made, or any immediate or mediate transferee of such initial transferee. The chain of possible liable parties is interrupted only when a transferee takes for value, in good faith and without knowledge of the voidable nature of the transfer. The requirement of "knowledge" is satisfied if the transferee "knew facts that would lead a reasonable person to believe that the property transferred was recoverable." *Smith v. Mixon*, 788 F.2d 229, 232 n. 2 (4th Cir.1986); *Robbins v. Robbins*, 91 B.R. 879, 886 (Bankr. W.D.Mo.1988).

In this case, the IRS was either the "initial transferee" or an "immediate ... transferee of such initial transferee." If Lah is viewed as acting for Nordic, then the IRS is the "initial transferee."[3] If Lah is viewed as having taken money illegally from Nordic, he is the "initial transferee" and the delivery of the cashier's check to the IRS makes the IRS an "immediate transferee" of Lah, the "initial transferee." If the IRS is considered as an "immediate transferee" of Lah, the IRS can prevail if the IRS shows that it took for value, in good faith, and without knowledge of the voidability of the transfer.

In this case, since it is stipulated that the transfer is voidable, the trustee can recover from the IRS if the IRS is the "initial transferee," and can recover if the IRS is an "immediate transferee" of Lah, unless the IRS shows that it (1) took for value, (2) in good faith, and (3) without knowledge of the voidability of the transfer.

■ The language of the statute clearly places the burden of showing value, good faith, and lack of knowledge, on the transferee as a defense. The way the statute is worded makes it clear that the trustee's

---

**3.** As the IRS has not met its burden of showing that it took the check without knowledge of the voidability of the transfer, it is not essential to determine whether or not the IRS was an initial transferee. There is substantial support for the conclusion that when a corporate officer takes checks drawn from corporate funds to pay personal debts, the corporate officer, and not the payee on the check is the initial transferee. *Ross v. United States (In re Auto–Pak, Inc.)*, 73 B.R. 52, 54 (D.D.C.1987); *Still v. American Nat'l Bank & Trust Co. (In re Jorges Carpet Mills, Inc.)*, 50 B.R. 84 (Bankr.E.D.Tenn.1985).

right to recover is broad, by giving rights against not only the transferee, but also against transferees of the initial transferee. However, to prevent innocent third parties from being hurt by this broadly delineated right of recovery, the law gives them a defense if they show that they took for value, in good faith, and without knowledge of the voidability of the transfer.

Bankruptcy Rule 6001 states that "[a]ny entity asserting the validity of a transfer under section 549 of the Code shall have the burden of proof." While the present dispute arises under section 550, section 549(c) provides an identical exception for good faith purchasers of realty. If the IRS is to prevail, the facts must show that they have met the burden of proving the three required conditions—value, good faith, and lack of knowledge.

■ The stipulated facts show that the check bore the notation "REMITTER: SWISS HAUS, INC.," which was the name under which the debtor was doing business. There is nothing in the record to indicate whether the notation was crossed out before or after the transfer to the IRS.

The IRS gave value for the check by crediting it against Lah's outstanding tax liability. However, because of the words "REMITTER: SWISS HAUS, INC.," it cannot be said that the IRS acted without knowledge of the voidability of the transfer. It is not an ordinary business practice for corporate entities to pay one another's taxes. This notation is sufficient to place a reasonable person on notice that the transfer was illegitimate, and by extension, that it was voidable. It is not apparent from the facts that the IRS had actual notice—that it did not accept the check in good faith—however, the facts give rise to an inference of inquiry notice. The IRS is a sizeable organization and its procedures for collecting taxes complicated, but there is nothing in size or complexity that should lessen the obligation to observe circumstances giving notice that something might

be wrong with accepting a check. The IRS, in crediting Lah's tax liability with money belonging to Swiss Haus, Inc., has done nothing to cause prejudice to others except Swiss Haus, Inc. When, as here, the transferee does not meet the burden of proving value given, good faith, or lack of knowledge, the unwinding of the situation by requiring the return of the money to the Trustee takes away from no one anything to which that person is entitled. Holding that the Trustee may recover simply places all the parties in the position where they were before the wrongful transfer took place. In other words, there is nothing special about the IRS to cause us to relax the requirements of value, good faith, and lack of knowledge in situations such as this one, being unwound by the court.

## IV.

Since the IRS cannot assert the defense of sovereign immunity, and since the IRS has not carried its burden of showing that it took without knowledge of the voidability of the transfer, the district court is AFFIRMED.

KENNEDY, Circuit Judge, dissenting.

Because I believe that Congress has not clearly waived the sovereign immunity of the United States, I dissent.[1] In the alternative, I also believe that the majority errs in affirming the District Court's holding that the IRS acted other than in good faith and with knowledge.

The doctrine of sovereign immunity prohibits suits against the United States except in those instances in which it has specifically consented to be sued. Such waivers are to be narrowly construed. *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 141–42, 92 S.Ct. 1456, 1466, 31 L.Ed.2d 741 (1972); *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). A purported waiver of sovereign immunity is to be read narrowly, with any ambiguity construed in fa-

---

1. The government has not waived its sovereign immunity argument by failing to raise it below since questions of sovereign immunity are jurisdictional and may be raised at any time. *United*

*States v. United States Fidelity & Guaranty Co.*, 309 U.S. 506, 513–14, 60 S.Ct. 653, 656–57, 84 L.Ed. 894 (1940).

vor of the United States. *See, e.g., United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976) ("a waiver of the traditional sovereign immunity 'cannot be implied but must be unequivocally expressed' ") (quoting *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969)); *McMahon v. United States,* 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 26 (1951) ("statutes which waive immunity of the United States from suit are to be construed strictly in favor of the sovereign"); *Sherwood,* 312 U.S. at 590, 61 S.Ct. at 771 ("[t]he section must be interpreted in the light of its function in giving consent of the Government to be sued, which consent, since it is a relinquishment of a sovereign immunity, must be strictly interpreted"). The citations in Justice Stevens' dissent[2] in *Hoffman v. Connecticut Dep't of Income Maintenance,* —— U.S. ——, 109 S.Ct. 2818, 2829, 106 L.Ed.2d 76 (1989), which purportedly establish the rule that waivers of sovereign immunity are construed broadly, are not on point. These cases do not provide for a broad reading of waivers of sovereign immunity but for a narrow reading of limitations placed on an otherwise broad waiver. *See, e.g., Block v. Neal,* 460 U.S. 289, 298, 103 S.Ct. 1089, 1094, 75 L.Ed.2d 67 (1983); *United States v. Yellow Cab Co.,* 340 U.S. 543, 554–55, 71 S.Ct. 399, 406–07, 95 L.Ed. 523 (1951). I do not believe the waiver at issue in this case falls within this framework since it is the terms of the waiver that are at issue, not the terms of a limitation placed upon a waiver.

The majority concludes that the United States has waived its immunity to this suit by enacting section 106 of the Bankruptcy Code, 11 U.S.C. § 106. Section 106 provides:

> (a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

> (b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

> (c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

> > (1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and

> > (2) a determination by the court of an issue arising under such a provision binds governmental units.

It is undisputed that the term "governmental unit" as used in section 106 applies to the IRS. 11 U.S.C. § 106. It is also undisputed that this case does not fall within the scope of subsections 106(a) or (b). Subsection 106(a) is a very narrow waiver of sovereign immunity intended to cover only those claims of the estate that are compulsory counterclaims to a claim against the estate filed by the governmental unit. *In re Willington Convalescent Home, Inc.,* 850 F.2d 50, 54 (2d Cir.1988), aff'd sub nom. *Hoffman v. Connecticut Dep't of Income Maintenance,* —— U.S. ——, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989); *WJM, Inc. v. Massachusetts Dep't of Pub. Welfare,* 840 F.2d 996, 1003 n. 8. (1st Cir. 1988); S.Rep. No. 989, 95th Cong., 2d Sess. 29, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5815. Here, the trustee's claim does not arise out of the IRS's claim against the debtor for the payment of taxes. Subsection 106(b) is also narrow in scope, waiving immunity only to provide an offset limited to the value of the governmental unit's allowed claim against the estate. *Willington,* 850 F.2d at 54; S.Rep. No. 989, *supra* at 29–30, *printed in* 1978 U.S.Code Cong. & Admin.News at 5787, 5815–16. Although subsection 106(b) may apply in this case, the Bankruptcy Court's

---

**2.** I refer to Justice White's opinion in *Hoffman*—which received the most votes of any opinion concurring in the judgment—as the "plurality" and Justice Marshall's and Stevens'

opinion as dissenting for convenience, as did Justice Marshall in his dissenting opinion. *See Hoffman,* 109 S.Ct. at 2825–27.

order is not limited to the value of the IRS's claim against the estate.

The parties agree that the United States has waived its sovereign immunity to this action, if at all, by its enactment of subsection 106(c). The trustee believes and the majority concludes that subsection 106(c) should be read to waive the federal government's sovereign immunity whenever a trustee brings a suit pursuant to a provision of the Bankruptcy Code that contains one of the words "creditor," "entity," or "governmental unit." The IRS argues that subsection 106(c) does not authorize the bankruptcy courts to enter a judgment for affirmative monetary recoveries against governmental entities but only allows them to make binding determinations of a government entity's rights in the debtor's estate.

The construction urged by the government is the same construction adopted by a plurality of the Supreme Court in *Hoffman*. The Court in *Hoffman* had before it the question of whether Congress waived the States' Eleventh Amendment sovereign immunity in subsection 106(c). Four members of the Court, in an opinion authored by Justice White, construed subsection 106(c) "as not authorizing monetary recovery from the States." *Hoffman*, 109 S.Ct. at 2823. Under this construction of subsection 106(c), "a State that files no proof of claim would be bound, like other creditors, by discharge of debts in bankruptcy, including unpaid taxes, but would not be subjected to monetary recovery." *Id.* (citations omitted). Justice White's opinion was joined by Chief Justice Rehnquist, and Justices Kennedy and O'Connor. Justice Scalia filed a concurring opinion in which he expressed the belief that Congress had no power to abrogate the States' Eleventh Amendment immunity. *Id.* at 2824.[3] Because he concluded that Congress had no power to abrogate the States' Eleventh Amendment sovereign immunity, he did not address the meaning of subsection 106(c). Justice Marshall, joined by Justices Bren-

nan, Blackmun and Stevens, and Justice Stevens, joined by Justice Blackmun, filed dissenting opinions expressing their belief that Congress had the power and had expressed the intent to abrogate the Eleventh Amendment sovereign immunity of the States. *Id.* at 2824, 2827.

The trustee argues and the majority concludes that we should not adopt the *Hoffman* plurality's construction of subsection 106(c) because the reasoning used to derive it is limited to the facts of the case. In cases involving the waiver of the States' Eleventh Amendment sovereign immunity, " '[l]egislative history generally will be irrelevant.' " *Id.* at 2824 (quoting *Dellmuth v. Muth*, —— U.S. ——, 109 S.Ct. 2397, 2401, 105 L.Ed.2d 181 (1989)). Thus the plurality limited its examination to the actual language of subsection 106(c), refusing to examine the legislative history.

In this case, the trustee believes that we should look not only to the language of subsection 106(c) in isolation, but also examine it in the context of other provisions of the Bankruptcy Code and in light of the legislative history. When determining whether the United States has waived its sovereign immunity there is no general prohibition on the examination of a statute in context or in light of its legislative history. *See, e.g., Federal Hous. Admin. v. Burr*, 309 U.S. 242, 247, 60 S.Ct. 488, 491, 84 L.Ed. 724 (1940) (examining the legislative history of other recently created agencies to determine whether Congress intended to waive the FHA's sovereign immunity); *Keifer & Keifer v. Reconstruction Fin. Corp.*, 306 U.S. 381, 394, 59 S.Ct. 516, 520, 83 L.Ed. 784 (1939) (examining a statute "in its entire setting" when seeking to determine whether Congress has waived the sovereign immunity of a government corporation). Although I believe that the Court has the authority to examine the context and legislative history of subsection 106(c) as well as its language, I am not convinced, on balance, that such an examination pro-

---

**3.** Justice O'Connor, in a concurring opinion, agreed with Justice Scalia that Congress could not abrogate the States' Eleventh Amendment immunity by enacting a statute under the Bank-

ruptcy Clause, but believed that Congress had not expressed a clear intention to make the attempt. Accordingly, she joined the plurality opinion. *Hoffman*, 109 S.Ct. at 2824.

duces an outcome different from that reached by a plurality of the Supreme Court.[4]

The language of the statute is not a model of clear, concise legislative drafting. Nevertheless, when reading the language narrowly in favor of the government, as we are required to do, I believe that the language of subsection 106(c) only waives sovereign immunity for the purpose of allowing a bankruptcy court to issue declaratory and injunctive relief.

I reach this conclusion for essentially the same reasons relied upon by the plurality of the Supreme Court and the Second Circuit in *Hoffman*. First, the words "determination by the court of an issue" used in subsection 106(c)(2) are both different and narrower in scope than the words "any claim" used in subsections 106(a) and (b). *Hoffman*, 109 S.Ct. at 2822–23; *Willington Convalescent Home*, 850 F.2d at 54–55; *see also Tew v. Arizona State Retirement Sys.*, 873 F.2d 1400 (11th Cir.1989) (adopting the Second Circuit's position in *Willington Convalescent Home*, as applied to the States' Eleventh Amendment sovereign immunity claim). The language of subsection 106(c) appears to be more in the nature of an authorization for declaratory relief than an authorization for an affirmative recovery.

Second, a contrary conclusion would render meaningless the language of subsection 106(c)(2). As has been often stated by the Supreme Court, "It is our duty 'to give effect, if possible, to every clause and word of a statute....'" *United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 520, 99 L.Ed. 615 (1955) (quoting *Inhabitants of Montclair Township v. Ramsdell*, 107 U.S. 147, 152, 2 S.Ct. 391, 394, 27 L.Ed. 431 (1883)); *see also Hoffman*, 109 S.Ct. at 2822–23. As did the plurality in *Hoffman*, I interpret the language in subsection 106(c)(2) to be a limitation on the scope of subsection 106(c), not a redundant statement declaring that governmental entities will be bound by the rulings subsec-

tion 106(c) authorizes the bankruptcy court to make. *Compare Hoffman*, 109 S.Ct. at 2822–23 (plurality opinion) *with Hoffman*, 109 S.Ct. at 2825 (Marshall, J., dissenting).

Third, the majority's reading results in subsection 106(c)—which speaks of the waiver of sovereign immunity for "governmental units"—having two completely different meanings depending on the governmental unit against which the trustee seeks to use it, a result surely never intended by Congress. The statute does not purport to draw distinctions between the treatment of state and federal governmental units, its provisions refer only to "governmental units." Absent some affirmative statement by Congress, I cannot conclude that such an anomalous result was intended. The greater scrutiny given congressional waivers of the State's sovereign immunity than the United States' immunity is insufficient to support such a result. *Accord Small Business Admin. v. Rinehart*, 887 F.2d 165, 169–70 (8th Cir.1989). Where the language applies equally to the waiver of the immunity of both state and federal governmental units, it is more appropriate to apply the higher standard of scrutiny.

I recognize, as pointed out by Justice Marshall, that subsection 106(c)(1) does not explicitly limit the waiver of sovereign immunity to those code provisions that contain trigger words *and* permit injunctive and monetary relief. *See Hoffman*, 109 S.Ct. at 2825. I do not believe that this creates a fatal flaw in the reasoning, however. It is not illogical for Congress to provide for such a limitation in subsection 106(c)(2) rather than in each individual section that contains a provision allowing for monetary damages. At the very least, I do not believe the tension in the statute created by this reading is any greater than the tension created by reading subsection 106(c)(2) out of the statute, which results from the majority's interpretation.

Finally, my examination of the statutory history does not lead me to a different

---

4. Since Congress intended the language we are interpreting to be applied in the same fashion to both state and federal governmental units, a resort to legislative history may well be inappropriate. Because I do not believe that the legislative history is a sufficiently clear expression of Congressional intent to waive sovereign immunity, I need not reach this issue, however.

result as it does the majority. The original versions of section 106 passed by the House and Senate did not contain a provision analogous to subsection 106(c). The Conference Committee that produced the final version of section 106 containing the provision did not produce a conference committee report. Instead, the floor managers of the legislation read into the Congressional Record identical statements explaining the Conference Committee's work. The statement on subsection 106(c) provided:

> Section 106(c) relating to sovereign immunity is new. The provision indicates that the use of the term "creditor," "entity," or "governmental unit" in title II applies to governmental units notwithstanding any assertion of sovereign immunity and that an order of the court binds governmental units. The provision is included to comply with the requirement in case law that an express waiver of sovereign immunity is required in order to be effective. Section 106(c) codifies In re Gwilliam, 519 F.2d 407 (9th Cir.1975), and In re Dolard, 519 F.2d 282 (9th Cir.1975), permitting the bankruptcy court to determine the amount and dischargeability of tax liabilities owing by the debtor or the estate prior to or during a bankruptcy case whether or not the governmental unit to which such taxes are owed files a proof of claim. Except as provided in sections 106(a) and (b), subsection (c) is not limited to those issues, but permits the bankruptcy court to bind governmental units on other matters as well. For example, section 106(c) permits a trustee or debtor in possession to assert avoiding powers under title 11 against a governmental unit; contrary language in the House report to H.R. 8200 is thereby overruled.

124 Cong.Rec. H32,394 (daily ed. Sept. 28, 1978) (comments of Rep. Edwards); 124

Cong.Rec. S33,993 (daily ed. Oct. 5, 1978) (comments of Sen. DeConcini).[5]

The majority and the trustee, relying particularly on the last sentence, read this statement as evidence that Congress clearly intended to waive the sovereign immunity of the United States when an action is filed by the trustee under any section containing a trigger word. The government reads this statement more narrowly, emphasizing the statement's reference to *Gwilliam v. United States (In re Gwilliam)*, 519 F.2d 407 (9th Cir.1975) and *In re Dolard*, 519 F.2d 282 (9th Cir.1975). These two cases held that under a provision of the former Bankruptcy Code, bankruptcy courts had the jurisdiction to determine the amount or legality of any unpaid tax of the debtor or the bankrupt estate. The government believes the language indicating that "subsection (c) is not limited to those issues, but permits the bankruptcy court to bind governmental units on other matters as well" should be read only to allow injunctive and declaratory actions on nontax issues that are similar to those endorsed for tax issues in *Gwilliam* and *Dolard*. *Accord Willington Convalescent Home*, 850 F.2d at 55–56.

As to the final sentence of the statement, the government admits it may lend some support to the trustee's position, but asserts its ambiguity should be read in favor of the government. Accordingly, the government would read the last sentence as authorizing actions by a bankruptcy court where the debtor has a possessory or ownership interest in property that the trustee seeks to include in the estate. As an example, the government cites *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). In that case, the IRS had seized a company's tangible assets to satisfy a tax liability but had not yet sold them. Under those circumstances, the Supreme Court held that

---

**5.** Due to the constraints in time in passing the Bankruptcy Reform Act of 1978, there was no conference report to reconcile the differences between the House and Senate bills. Instead Representative Edwards and Senator DeConcini made oral reports to Congress on the results of the conference. *See* 124 Cong.Rec. H32,391 (1978) (statement of Rep. Rousselot); 124 Cong.

Rec. H32,392 (1978) (statement of Rep. Edwards); 124 Cong.Rec. S33992 (1978) (statement of Sen. DeConcini). The Supreme Court has treated these floor statements as "persuasive evidence of congressional intent." *Begier v. IRS*, —— U.S. ——, 110 S.Ct. 2258, 2266 n. 5, 110 L.Ed.2d 46 (1990).

the trustee could avoid the seizure and recover the assets since the debtor retained ownership of the property until it was sold. The IRS was entitled only to the security provided by its lien on the property. *Id.* at 211, 103 S.Ct. at 2316. The trustee counters that cases such as *Whiting Pools*, which arise under 11 U.S.C. § 542, technically do not involve the "avoiding powers" of the Bankruptcy Code. Therefore, the trustee asserts this is not a possible meaning of the last sentence of the statement.

Although the final sentence of the joint statement on section 106 does lend support to the majority's position, I believe that the congressional statements taken as a whole are not sufficiently clear to override the mandate of the Supreme Court to construe provisions concerning the waiver of the sovereign immunity "strictly in favor of the sovereign." *McMahon*, 342 U.S. at 27, 72 S.Ct. at 19. Since both the statutory language and the legislative history are capable of a narrower reading, it is this reading to which we should give effect.

The trustee also seeks to bolster his position by reference to the legislative history of 11 U.S.C. § 547(b)(2). Subsection 547(b)(2) allows the trustee to avoid certain prepetition transfers of property by the debtor to a creditor that were made "for or on account of an antecedent debt owed by the debtor before such transfer was made." The original Senate version of the bill specifically exempted payments of tax debts. The Conference Committee adopted the House version of this provision, however. The joint explanatory statement noted the effect of this choice:

Section 547(b)(2) of the House amendment adopts a provision contained in the House bill and rejects an alternative contained in the Senate amendment relating to the avoidance of a preferential transfer that is payment of a tax claim owing

to a governmental unit. As provided, section 106(c) of the House amendment overrules contrary language in the House report with the result that the Government is subject to avoidance of preferential transfers.

124 Cong.Rec. H32400 (daily ed. Sept. 28, 1978) (statement of Rep. Edwards); 124 Cong.Rec. S34,000 (daily ed. Oct. 5, 1978) (statement of Sen. DeConcini).

This statement contains the strongest evidence that Congress intended to waive its sovereign immunity to suit. When read in light of the entire legislative history even this language does not fully resolve all doubts. The original committee reports explain that section 550 "enunciates the separation between the concepts of avoiding a transfer and recovering from the transferee." S.Rep. No. 989, 95th Cong., 2d Sess. 90 (1978); H.R.Rep. No. 595, 95th Cong., 1st Sess. 375 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5876, 6331. Our concern here is not with the avoidance determination but with the question of whether the trustee can recover the funds from the IRS once the transfer is avoided. Read in context, the language cited by the trustee may only authorize bankruptcy courts to make the avoidance determination, not order recovery from the government. For the purpose of this case, I do not decide the precise effect of this language. I only conclude that this one statement is not sufficient, standing alone, to override the ambiguities in the language of subsection 106(c).[6]

### The IRS as a Good Faith Subsequent Transferee Without Knowledge

The majority reaches no conclusion as to whether the IRS is an initial trustee or a subsequent transferee within the meaning of 11 U.S.C. § 550(a)(1). It affirms the

6. The IRS argues that because this case arises in the first instance under § 549, which does not contain one of the trigger words listed in § 106(c)(1), the case does not qualify under § 106. Subsection 550(a), under which the trustee is authorized to bring an action to recover the property, does contain such triggering language, but provides that property may only be recovered "to the extent that a transfer is

avoided under section ... 549." Because of my disposition of the sovereign immunity question, I need not decide whether it is sufficient that § 550(a) contain one of the trigger words. Further, I note that the order for payment—the act that offends sovereign immunity—is made under § 550(a). The determination under § 549 is merely a declaration of the type endorsed by my reading of § 106(c).

District Court's holding that even if an immediate transferee, it should have known the transfer was voidable as a consequence of the notation "REMITTER: SWISS HAUS, INC." Because of my conclusion that the federal government has not waived its sovereign immunity, I am not required to reach these questions. Nevertheless, I do so because I believe the majority has erred in its conclusion that the IRS acted in bad faith and with knowledge of the transaction's voidability. The trustee may recover property from "the initial transferee of such transfer or the entity for whose benefit such transfer was made" without limitation. 11 U.S.C. § 550(a)(1). However, the trustee cannot recover from a subsequent transferee "that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided...." 11 U.S.C. § 550(b)(1).

The District Court, adopting the Bankruptcy Court's resolution of the issue, held that the IRS was an initial transferee under subsection 550(a)(1) because "[t]he debtor or at least its agent, procured the official bank check and delivered it to the Internal Revenue Service." Joint App. at 39. The trustee and the IRS had submitted the matter to the Bankruptcy Court on stipulated facts and briefs. The stipulations do not make clear the circumstances under which Lah delivered the check to the IRS. While there was an indication that the IRS had notice that Nordic Village had filed for bankruptcy protection as of the time it accepted the check, there is no indication that the person or persons who accepted the check knew or should have known of the bankruptcy filing or knew or should have known that Nordic Village did business as Swiss Haus. In the alternative, the District Court held that even if the IRS was a subsequent transferee, it did not cancel the debt in good faith. The court reasoned that because the IRS had notice of Nordic Village's bankruptcy filing, and because the check contained the notation

"REMITTER: SWISS HAUS, INC.," the IRS was required to investigate the source of the check.

The clearest articulation of the test for when an individual or institution becomes a transferee is contained in *Bonded Fin. Serv's, Inc. v. European Am. Bank*, 838 F.2d 890 (7th Cir.1988). One of the issues facing the court in *Bonded Financial* was whether a bank becomes an initial transferee by cashing a check from the debtor corporation and, as per the instructions accompanying the check, depositing it in the account of a corporate officer of the debtor. The court held the bank's actions did not give it the status of a transferee and concluded the bank was a mere "financial intermediary" to the transaction. *Id.* at 893. The court reasoned "[T]he minimum requirement of status as a 'transferee' is dominion over the money or other asset, the right to put the money to one's own purposes." *Id.* Though the language could be read more narrowly, I believe that the Seventh Circuit intended to cover two situations: (1) those where the person had the legal and equitable right to put the money to his own uses and (2) those where the person had the intent and ability to do so even if the "right" to do so is, in a legal sense, lacking. It is this interpretation that I would apply in this case.

In this case, Lah does not fall into the first category. He lacked both the legal and equitable right to make the transfer. It is difficult from the stipulated facts to determine whether Lah's possession of the funds falls into the second category. However, I do not believe the District Court was correct in holding that because Lah used his authority as a corporate officer to cash a counter check, the transfer was from the corporation to the IRS.[7] To so hold would establish a rule that no person who receives embezzled property directly from an embezzler could ever be a good faith purchaser for value and without notice. Instead, I believe the question turns on the degree of control Lah exercised over

---

7. I agree with the holdings below and decision of the Seventh Circuit in *Bonded Financial* that the bank, Ameri–Trust, is not a transferee, but merely a "financial intermediary." *Bonded Financial*, 838 F.2d at 893.

the funds when he cashed the counter check. If the bank would have given Lah cash or issued a cashier's check to anyone of Lah's choosing, it is clear that Lah would have been the initial transferee because he would have had the intent and ability to put the money to his own use. *See Ross v. United States (In re Auto-Pak, Inc.),* 73 B.R. 52 (D.D.C.1987); *Stills v. American Nat'l Bank & Trust Co. (In re Jorges Carpet Mills, Inc.),* 50 B.R. 84 (Bankr.E.D.Tenn.1985). Note that Lah bought other cashier's checks as well, according to the stipulated facts. In contrast, if the bank allowed Lah to cash the counter check only because the proceeds were to be used to purchase a cashier's check payable to the IRS, then Lah possessed only a limited ability to control the funds. Such limited control is an insufficient basis to conclude that Lah is a transferee.[8]

Even if it is impossible to tell from the stipulation of facts agreed to by the parties which situation this case most closely resembles, this cannot aid the trustee. It is the trustee who bears the initial burden of proving that a transfer occurred and that the IRS is the initial transferee. *See, e.g., In re Closson,* 100 B.R. 345, 347–48 (Bankr. S.D.Ohio 1989). On this record, the trustee has not met his burden.

The trustee can still prevail by showing that the IRS received the money without giving value, with knowledge of the voidability of the transfer to Lah, or other than in good faith. 11 U.S.C. § 550(b)(1). The trustee concedes that the transfer was for value—the IRS canceled Lah's tax indebtedness. Although the trustee argues that the IRS had knowledge and did not act in good faith, contrary to the majority, I do not believe this conclusion is warranted on the facts before us.[9]

Unlike the majority, I do not believe that it is the government that bears the burden of proof on this issue. The majority is correct when it asserts that Bankruptcy Rule 6001 places the burden of proving the good faith and knowledge of an *initial* transferee of real property under 11 U.S.C. § 549(e) on the party wishing to assert the validity of the transfer. This rule does not apply to section 550, however. Congress made an explicit choice to separate "the concepts of avoiding a transfer and recovering from the transferee." S.Rep. No. 989, 95th Cong., 2d Sess. 375–76 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5876, 6331. Here, it is not disputed that the initial transfer to Lah was wrongful and could be avoided. The question to be answered is whether the money can be recovered from a *subsequent* transferee, the government.

Although the Code makes clear that initial transferees are generally presumed to be on notice of the voidability of a transfer and have few if any defenses to the trustee, (*see* 11 U.S.C. §§ 549, 550(a)(1); Bankruptcy Rule 6001), the Code also makes clear that subsequent transferees are not under such a severe disability. 11 U.S.C. § 550(b). Such a dichotomy is rationally related to the fact that initial transferees will generally have knowledge and therefore act in bad faith since they deal directly with the bankrupt. In contrast, subsequent transferees are much more likely to be innocent third parties. They have little ability to protect themselves by making cursory checks on their transferor. Absent an express rule placing the burden of proof on subsequent transferees, I believe the burden should rest on the party seeking to recover the property, at least as to the issues of the subsequent transferee's good

---

8. I do not think it is sufficient that Lah had the ability to direct the IRS to apply the cashier's check to his personal tax liability. Lah must have the ability to control who is to receive the funds, not just who will receive the benefit of the payment. This latter situation is too closely analogous to a case where the debtor sends a check directly to the IRS with instruction that the IRS credit Lah's account. In that instance, the IRS would be the initial transferee and Lah

would be the entity for whose benefit the transfer was intended.

9. Since we are drawing inferences from stipulated facts, it might be preferable to have such inferences drawn by the Bankruptcy Court. However, the questions can perhaps be characterized as mixed questions of law and fact and to a large extent appear to turn on who has the burden of proof.

faith and knowledge. Accordingly, I conclude that the trustee bears the burden of showing the IRS acted with knowledge or in bad faith. *See, e.g., Sarasota Plaza Assoc. Ltd. Partnership v. Trupin (In re Sarasota Plaza Assoc. Ltd. Partnership)*, 105 B.R. 109, 110 (Bankr.M.D.Fla.1989); *In re Closson*, 100 B.R. at 347–48; *Holt v. FDIC (In re Instrument Sales & Serv., Inc.)*, 99 B.R. 742, 746 (Bankr.W.D.Tex. 1987); *De Rochfort Co. v. Sunshine State Bank (In re De Rochfort Co.)*, 22 B.R. 826, 827 (Bankr.S.D.Fla.1982). I do not believe the trustee has met his burden.

There is no evidence in the record that the IRS had knowledge of the voidability of the transfer from the corporation to Lah. The mere fact that the check contained a notation stating that the check was purchased by "Swiss Haus" is not sufficient to put any recipient of the check not familiar with the bankruptcy of Nordic Village, Inc. on *actual* notice that the transfer was voidable. Although likely true that certain individuals at the IRS were familiar with Nordic Village's bankruptcy, there is no showing on this record that the individuals who received the check had such knowledge. *See Smith v. Mixon (In re Mixon)*, 788 F.2d 229, 232 (4th Cir.1986) (knowledge does not mean "constructive notice"). To impute the knowledge of each component of the IRS to every other component would place an untenable administrative burden on the agency.

Similarly, I do not believe the trustee has shown that the IRS acted in bad faith. Were Lah to have sent this check through the mail in the normal course of dealings with the IRS, there would be no doubt that the IRS had received the check in good faith. The trustee argues that because of the size of the check, the filing of IRS tax liens against Lah's assets, and the notation on the check, the IRS should have been suspicious when Lah presented it.

I do not believe that these circumstances, without more, would suggest to the IRS agent receiving the payment that the transfer was voidable. In collecting billions of tax dollars, the IRS routinely receives large checks, even from persons who are behind in their tax payments. Further, it is not uncommon for a cashier's check to have been purchased by someone other than the taxpayer, particularly where the tax debt arises out of the operation of a business. Moreover, the trustee's rule would require the IRS to investigate the sources of funds of hundreds, if not thousands, of taxpayers. *Cf. FDIC v. Wood*, 758 F.2d 156, 162 (6th Cir.) (FDIC not charged with knowledge of a defense merely because information could be found in records of failed bank it took over since requirement would constitute unreasonable burden), *cert. denied*, 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985). Placing this burden on the IRS does not seem to have been the purpose of the good faith requirement. The primary concern was preventing a transferee from washing the transfer through an innocent third party who would then transfer the property to the transferee. *See, e.g.,* H.R.Rep. No. 595, 95th Cong., 2d Sess. 376 (1978); S.Rep. No. 989, 95th Cong., 2d Sess. 90 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5876, 6332. Accordingly, I do not believe the trustee has met his burden to prove that the IRS acted other than in good faith or with knowledge.

For all of these reasons, I respectfully dissent from the majority's decision to waive the sovereign immunity of the United States and also its finding that the IRS received the check under circumstances where it is charged with knowledge because it did not make inquiry.