**In re Perri KANTERMAN, Debtor.**

**Alvin GALLANT and Joan Gallant, Plaintiffs,**

**v.**

**Perri KANTERMAN, Donald Kanterman, Federal Deposit Insurance Corporation Receiver of First Inter–County Bank of New York, Arnold I. Biegen, Marchi Jaffe Steinberg Crystal Katz & Burke, and Alvin Gallant as a shareholder of Gallant Securities, Inc. and Gallant Inter–Capital Corp., Defendants.**

**No. 89 CIV. 4620 (LBS).**

United States District Court,
S.D. New York.

Dec. 6, 1989.

Gross & Novak, P.A., East Brunswick, N.J., for Federal Deposit Ins. Corp.; Timothy O'Neill, of counsel.

Shaw, Licitra, Ernio & Schwartz, P.C., Garden City, N.Y., for Karen Carter Caso, Trustee; Sarah M. Keenan, Michael Galina, of counsel.

Richard W. Meirowitz, New York City, for Alvin Gallant and Joan Gallant.

## OPINION

SAND, District Judge.

The Federal Deposit Insurance Corporation ("FDIC") appeals from the bankruptcy court's denial of its motion for summary judgment. *See In re Kanterman*, 99 B.R. 208 (S.D.N.Y.1989) (granting leave to appeal); *In re Kanterman*, 97 B.R. 768 (Bankr.S.D.N.Y.1989) (opinion below). This Court has jurisdiction pursuant to 28 U.S.C. § 158(a), and we affirm the opinion of Bankruptcy Judge Buschman.

The undisputed factual background of this case is described in Judge Buschman's opinion, and we summarize here only the salient facts. This case involves competing claims to the proceeds from the foreclosure sale of real property located in Southampton, New York. Perri Kanterman executed the mortgage and mortgage note on the Southampton property to secure a loan from First Inter–County Bank of New York ("FICB"). The FDIC holds the mortgage and mortgage note as receiver for FICB, which instituted the foreclosure proceedings in May, 1987. The original transaction involved a loan by FICB to Gallant Securities, Inc. ("G.S.I.") through an inter-

mediate party, Arnold I. Biegen. G.S.I., a non-clearing securities broker and underwriter, was owned by Donald Kanterman, Perri's husband, and Alvin Gallant. In the late Summer and early Fall of 1986, Biegen, acting as counsel for G.S.I., borrowed $265,000 from FICB in three phases and re-lent those funds to G.S.I. The FICB Credit Committee approved the final terms of the loan on October 22, 1986:

> # 147   Arnold Biegen
> Approved: $100M increase in unsecured loan to new total $265M. Rate: prime + 2½%. Life insurance policy on him naming FICB as beneficiary for $300M, assignment of a second mortgage on a residence and a letter of understanding to be given as additional support. Documents to be reviewed by counsel. Proceeds to be reloaned to Gallant Securities. Repayment to come as Gallant repays or [from] Biegen's cash flow. J. Hurtig Memo 10/20.

Biegen accordingly obtained a mortgage and mortgage note from Perri Kanterman, dated October 29, 1986, and assigned those documents to FICB on November 3, 1986. In early 1987, G.S.I. and Biegen defaulted on the loan from FICB.

On November 27, 1987, Perri Kanterman filed a voluntary petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, which was converted to a case under Chapter 7 on February 19, 1988. The trustee in bankruptcy alleges in its Third Amended Answer that the mortgage and mortgage note executed by the bankruptcy debtor, Perri Kanterman, are voidable as fraudulent transfers pursuant to § 544(b) of the Bankruptcy Code, 11 U.S.C. § 544(b), and New York Debtor and Creditor Law §§ 270 *et seq.* (McKinney's 1988). The Fourth Cross–Claim asserts that the mortgage and mortgage note are voidable in that the mortgage was conveyed and the note was given by Perri Kanterman for a lack of fair consideration and that by signing the mortgage note and conveying the mortgage, Perri Kanterman was rendered insolvent. In her Sixth Cross–Claim, the trustee asserts that Perri Kanterman conveyed the mortgage with the actual intent to defraud creditors, and the Seventh

Cross–Claim asserts that Biegen knew or should have known that Perri Kanterman was insolvent when she conveyed the mortgage or that the conveyance of the mortgage rendered her insolvent.

The bankruptcy court denied FDIC's motion for summary judgment on the cross-claims asserted by the trustee. The FDIC argued before the bankruptcy court and argues again here on appeal that regardless of whether the elements of a fraudulent transfer can be proven in this case, the decision of *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and its progeny preclude the trustee's attempts to avoid the mortgage lien and mortgage note as a matter of law. In *D'Oench,* the Supreme Court held that an accommodation maker was estopped from asserting against the FDIC that the note was given without consideration. The Supreme Court grounded their holding in "a federal policy to protect the [FDIC], and the public funds it administers, from misrepresentations made to induce or influence the action of the [FDIC], including misstatements as to the genuineness or integrity of securities in the portfolio of the banks which it insures or to which it makes loans." *D'Oench,* 315 U.S. at 459, 62 S.Ct. at 680.

Congress subsequently codified and expanded *D'Oench* in § 2[13](e) of the Federal Deposit Insurance Act of 1950, 12 U.S.C. § 1823(e) (as amended). At the time of the bankruptcy court decision, that codification applied only to the FDIC when it acted as a purchaser in a purchase and assumption transaction, not when the FDIC acted in its capacity as receiver as it does here. In August, 1989, however, Congress amended that provision to apply as well to the FDIC in its receivership capacity. *See* Financial Institutions Reform, Recovery and Enforcement Act, Pub.L. No. 101–73, 103 Stat. 256 (August 9, 1989). As amended, § 1823(e) now provides:

> No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it under this section or section 11, either as security for a loan or by purchase or as a receiver of any in-

sured depository institution, shall be valid against the [FDIC] unless such agreement—

    (1) is in writing,

    (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

    (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

    (4) has been, continuously, from the time of its execution, an official record of the depository institution.

Both *D'Oench* and § 1823(e) have been applied frequently to preclude the assertion of defenses based on separate secret agreements in actions brought by the FDIC seeking to enforce unconditional notes and guarantees. *See Howell v. Continental Credit Corp.*, 655 F.2d 743, 746 (7th Cir. 1981) (collecting cases).

Therefore, to claim the protections offered by both *D'Oench* and § 1823(e), the FDIC must prove the existence of an "agreement." The FDIC argues for a broad interpretation of what constitutes a "secret agreement" under *D'Oench*. The FDIC emphasizes that the Supreme Court in *D'Oench* held that the rule of estoppel applies if a maker of a note "lent himself to a scheme or arrangement whereby the banking authority on which [the FDIC] relied in insuring the bank was or was likely to be misled." *D'Oench*, 315 U.S. at 460, 62 S.Ct. at 681. In this case, the FDIC argues, Perri Kanterman lent herself to such a scheme by entering into the alleged fraudulent conveyance of her real property. Since it is undisputed that Perri Kanterman knew that the proceeds of the loan secured by a mortgage on her real property would be paid to G.S.I., the FDIC argues that:

    [b]y virtue of her actions, loan documents existed in the bank's records that were ostensibly valid. It is this side agreement between the debtor [Perri Kanterman] and Biegen that tends to mislead bank examiners, and it is this side agreement that is now being asserted against the FDIC to defeat its interest in the proceeds from the debtor's property. Under the cases following *D'Oench, Duhme*, the very act of the debtor in enabling a transaction where she failed to receive consideration constitutes a "scheme or arrangement" sufficient to invoke the *D'Oench* estoppel doctrine.

Reply Brief of FDIC at 4. If the bankruptcy trustee is not estopped in cases such as these, the FDIC argues that bank examiners will be misled since mortgages in bank portfolios that are seemingly valid on their face will in fact be voidable. Urging the need to protect the integrity of the bank examination process, the FDIC argues that the public policy concerns behind *D'Oench* and § 1823(e) apply just as forcefully when the debtor has been replaced by a bankruptcy trustee.

We disagree with the FDIC's broad interpretation of the scope of the estoppel doctrine of *D'Oench* and § 1823(e). In *Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987), the Supreme Court decided that the "common meaning of the word 'agreement' must be assigned to its usage in § 1823(e)." *Id.* at 91, 108 S.Ct. at 401. A common definition of an agreement clearly includes some understanding or meeting of the minds between the parties involved, whether explicit or implicit. The defenses asserted in this case, however, are unavailable to the individual debtor Perri Kanterman and can only be asserted by a trustee in bankruptcy. When a trustee in bankruptcy asserts claims for fraudulent conveyance, she acts on behalf of the creditors of the bankrupt debtor, not on behalf of the debtor herself. If the debtor were involved in some "secret agreement" with the lender, such as an agreement not to enforce the loan, then the trustee would be estopped from asserting the terms of that secret agreement as a defense against the FDIC. However, when the trustee is asserting claims for fraudulent conveyance, those defenses arise by operation of law and not on account of any secret agreement between the debtor and the bank. *See In re First City Financial Corp.*, 61

B.R. 95, 97 (Bankr.D.N.M.1986) (voidability of a preferential transfer arises under law and is not due to a secret agreement); *In re LaMancha Aire, Inc.*, 41 B.R. 647 (Bankr.S.D.Fla.1984). The cross-claims for fraudulent conveyance allege not only that Perri Kanterman did not receive sufficient consideration, but also that the transaction rendered the debtor insolvent and that the debtor intended to defraud her creditors. We hold that these cross-claims for fraudulent conveyance are not part of any agreement between the debtor and the lender. Even though a trustee's ability to avoid a facially valid mortgage may mislead the banking authorities when evaluating the credit worthiness of an insured banking institution, the legal doctrine of estoppel contained in *D'Oench* and its progeny and in § 1823(e) can not be extended to include such scenarios where an "agreement" does not exist.

Section 1823(e) applies only to agreements. Even absent any agreement, the estoppel doctrine of *D'Oench* has been applied to cases where the party asserting the defense against the FDIC has been reckless. *Compare FDIC v. McClanahan*, 795 F.2d 512 (5th Cir.1986) (maker of note estopped since he recklessly signed blank promissory note) *with FDIC v. Meo*, 505 F.2d 790 (9th Cir.1974) (maker of note not estopped since "wholly innocent"). For the purposes of this motion for summary judgment, the FDIC has not alleged undisputed facts to show that the debtor Perri Kanterman acted recklessly. We express no opinion as to whether if the debtor had engaged in such reckless conduct, that conduct could be attributed to the bankruptcy trustee to support the application of the estoppel doctrine.

In conclusion, this Court holds that § 1823(e) and the *D'Oench* line of cases do not as a matter of law estop a trustee in bankruptcy from asserting claims for fraudulent conveyance against the FDIC as receiver with respect to a mortgage and mortgage note executed by the bankruptcy debtor and assigned to the failed bank. The bankruptcy court's denial of the FDIC's summary judgment motion is affirmed.

SO ORDERED.