**In re ORANGE COUNTY SANITATION, INC., Debtor.**

**In re ROUND LAKE SANITATION CORP., Debtor.**

**Thomas GENOVA, Chapter 7 Trustee, Plaintiff,**

**v.**

**Michael R. GOTTLIEB, Esq., Kostelantz & Fink, LLP, Greenberg & Gaiman, LLP, Internal Revenue Service, United States of America, Ruderman, Brown & Brandes, New York State Department of Taxation and Finance, Robert Gottlieb, CPA, David Gold, Esq., and Frank Labuda, Esq., Defendants.**

**Bankruptcy Nos. 95–30396, 95–30397. Adversary No. 96–7093.**

United States Bankruptcy Court, S.D. New York.

Sept. 16, 1997.

---

Thomas Genova, Genova & Malin, Wappingers Falls, NY, for Plaintiff–Trustee/Movant.

Edward Scarvalone, Assistant United States Attorney, New York City, for Defendant–IRS/Cross–Movant.

DECISION ON MOTION AND CROSS MOTION FOR SUMMARY JUDGMENT PURSUANT TO 11 U.S.C. §§ 549 AND 550

JEREMIAH E. BERK, Bankruptcy Judge.

### I. INTRODUCTION

On February 27, 1995, involuntary Chapter 7 petitions were filed against Orange County

Sanitation, Inc. and Round Lake Sanitation Corp. ("Debtors", or after consolidation, "Debtor"). On May 18, 1995, the cases were converted to Chapter 11 and on April 9, 1996 the cases were converted back to Chapter 7. The two Chapter 7 cases were substantively consolidated on September 17, 1996. On September 4, 1996, the Chapter 7 Trustee, Thomas Genova, ("Trustee") commenced the instant adversary proceeding, pursuant to §§ 549 and 550 of the Bankruptcy Code, seeking to recover funds transferred post-petition to various parties, including the Internal Revenue Service ("IRS").

The Trustee filed a motion for summary judgment on February 11, 1997. The IRS filed a cross-motion for summary judgment on July 15, 1997. Hearings on both motions were held on August 5 and August 26, 1997. For the reasons stated, I am satisfied that no factual issues exist and that summary judgment should be denied to the Trustee and granted in favor of the IRS.[1]

## II. FACTS

In November 1994, the corporate officers and shareholders of the Debtor corporations, Louis Mongelli, Robert Mongelli, Joseph A. Mongelli, (collectively, the "Mongellis"), negotiated an offer-in compromise with the IRS in settlement of their personal tax liabilities. The IRS agreed to accept $2,365,532, plus certain accruals, in partial payment of the Mongellis' personal income tax obligations. (IRS' LBR 7056–1 Stmt. at ¶ 1–2.)

Prior to the filing of the corporate involuntary bankruptcy petitions, and pursuant to a criminal plea agreement between the Mongellis and the U.S.A., the two corporations entered into an agreement to sell all of their assets to Browning–Ferris Industries of New York, Inc. (Trustee's LBR 7056–1 Stmt. at ¶ 3–5; Tabak Decl. at ¶ 4.) On

June 30, 1995, a portion of the sale proceeds was remitted to Michael R. Gottlieb, Esq. ("Gottlieb"), the Debtors' court-approved bankruptcy attorney. On that date, Gottlieb deposited $871,615.29 into his attorney escrow account. (Trustee's LBR 7056–1 Stmt. at ¶ 5.)

By ordinary check drawn on his attorney's escrow account on August 16, 1995, Gottlieb transferred $106,286.15 to the IRS. This transfer, made post-petition and without court approval, is the subject of these motions. The check, payable to the order of the IRS, bore the notation "For Round Lake Sanitation", and was forwarded to Kevin Flynn, Esq. ("Flynn"), attorney for the Mongellis. (Trustee's LBR 7056–1 Stmt. at ¶ 6–7; IRS' LBR 7056–1 Stmt. at ¶ 6.)

Before making the transfer, Gottlieb misinformed Leon Greenberg, Esq. ("Greenberg"), an unretained attorney for the corporate Debtors, that the bankruptcy cases had been dismissed.[2] (IRS' Decl., Ex. D at 6.) Greenberg then informed Flynn that the Debtors' bankruptcy cases were dismissed. Thereafter, Flynn sent the check to the IRS with a transmittal letter confirming a previous telephone conversation between Flynn and an IRS representative. (IRS' LBR 7056–1 Stmt. at ¶ 4.) The letter stated that the check was to be used as partial payment of the offer-in-compromise for the Mongellis' personal tax liability. (IRS' LBR 7056–1 Stmt. at ¶ 3; Trustee's S.J. Motion, Ex. B.) Upon receipt of the check, the IRS released the federal tax liens it held on the Mongellis' property. (IRS' LBR 7056–1 Stmt. at ¶ 20.)

The Chapter 7 Trustee commenced this adversary proceeding pursuant to §§ 549 and 550 of the Bankruptcy Code seeking to recover from the IRS the $106,286.15 transfer, as well as other post-petition transfers of estate funds made by Gottlieb to others. The Trustee then filed his motion for sum-

---

1. Subject matter jurisdiction arises pursuant to 28 U.S.C. §§ 157(a), 1334(b) and the "Standing Order of Referral of Cases to Bankruptcy Judges of the Southern District of New York" dated July 10, 1984 (Ward, Acting C.J.). This is a core proceeding under 28 U.S.C. § 157(b)(2)(E), (H) and (O).

2. Recently, Gottlieb pled guilty to a felony under 18 U.S.C. § 1001 of making false statements in

connection with these bankruptcy cases. He was sentenced by the United States District Court for the Southern District of New York to five months in prison, to be followed by three years of supervised release, including five months of home confinement. In addition, Gottlieb was fined $5,000 and ordered to make restitution of $207,-940.00 for funds he illegally transferred from these estates.

mary judgment and the United States Attorney, representing the IRS, filed its cross-motion for summary judgment.

## III. DISCUSSION

Fed.R.Bankr.P. 7056 applies Fed.R.Civ.P. 56 to summary judgment motions in adversary proceedings. The court shall grant a motion for summary judgment if the movant establishes that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. The moving party has the burden to establish that no relevant facts are in dispute. *Donahue v. Windsor Locks Bd. of Fire Commissioners,* 834 F.2d 54, 57 (2d Cir.1987). "[A] court must resolve all ambiguities and draw all reasonable inferences against the moving party." *Id.*

Under section 549 of the Bankruptcy Code, a Trustee "may avoid a transfer of property of the estate ... that occurs after the commencement of the case and that is not authorized...." 11 U.S.C. § 549(a)(1997). Here, the transfer of estate funds to the IRS is potentially voidable because it occurred after commencement of the bankruptcy case and was unauthorized.

Section 550(a) of the Bankruptcy Code provides that to the extent a transfer is avoided under Bankruptcy Code § 549, "the Trustee may recover ... from (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a)(1997). Since the check was delivered for and used to pay the personal tax liabilities of the Mongellis, it is clear that the IRS is not "the entity for whose benefit the transfer was made." 11 U.S.C. § 550(a)(1). While a Trustee may recover from an initial transferee or the subsequent transferee, a subsequent transferee is not liable if it took "for value, ... in good faith, and without knowledge of the voidability of the transfer avoided." 11 U.S.C. § 550(b).

**3.** In his supporting brief, the Trustee cites cases that support this view. *See First Nat'l Bank of Barnesville v. Rafoth (In re Baker & Getty Fin'l Servs.),* 974 F.2d 712, 722 (6th Cir.1992) (defining "initial transferee" as "one who receives money from a person or entity ... in bankruptcy,

### 1. Initial Transferee

An initial transferee is one who receives property and exercises control or dominion over it. *Bonded Fin'l Servs. v. European American Bank,* 838 F.2d 890, 893 (7th Cir.1988); *Robinson v. Home Sav. of Am. (In re Concord Senior Hous. Found.),* 94 B.R. 180, 182–83 (Bankr.C.D.Cal.1988).[3] A party that merely facilitates the transfer from the debtor to a third party acts as a conduit and is not a transferee. *Security First National Bank v. Brunson (In re Coutee),* 984 F.2d 138, 141 (5th Cir.1993).

The requisite dominion or control is present when a corporate officer or shareholder causes the corporation to make payments on his personal debts or for his personal benefit. *Grogan v. Internal Revenue Service (In re Malcolm Crane, Inc.),* No. 93–42396, Slip op. at 5 (Bankr.E.D.Mich. Jan. 8, 1997). When a corporate officer receives a check drawn on a corporate account and uses it to pay personal debts, the corporate officer, and not the payee on the check, is the initial transferee. *Id.* at 6–7.

In *In re Nordic Village, Inc.,* Josef Lah, an officer and shareholder of a debtor corporation, drew a corporate check to a bank and the bank, in turn, issued several cashier's checks therefrom. *Internal Revenue Serv. v. Nordic Village, Inc. (In re Nordic Village, Inc.),* 915 F.2d 1049, 1050 (6th Cir.1990), *rev'd on other grounds,* 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). One of those checks, bearing the crossed-out but legible notation "REMITTER: SWISS HAUS, INC.", was delivered to the IRS, with instructions to credit the check against Lah's personal tax liabilities. The IRS followed that instruction. The court explained:

> If Lah is viewed as acting for [the debtor], then the IRS is the "initial transferee." If Lah is viewed as having taken money illegally from [the debtor], he is the "initial

and has dominion over the funds"); *Nordberg v. Societe Generale (In re Chase & Sanborn Corp.),* 848 F.2d 1196, 1199–1200 (11th Cir.1988) (mere receipt of funds is not sufficient where defendants had never "actually controlled the funds" at issue).

transferee" and the delivery of the cashier's check to the IRS makes the IRS an "immediate transferee" of Lah, the "initial transferee."

*Id.* at 1055.

In our case, Gottlieb drew a check on his attorney escrow account payable to the IRS with the notation thereon "For Round Lake Sanitation", and forwarded it to Flynn. Flynn then forwarded the check to the IRS with a transmittal letter indicating that the check was to be applied in partial satisfaction of the Mongellis' offer-in-compromise. The Trustee believes that "both Michael Gottlieb and Kevin Flynn acted merely as a conduit for the transfer of the funds" and thus concludes that the IRS is the initial transferee. (Trustee's Memo. of Law at 7.) The IRS argues that the Mongellis were the initial transferees because they "took control of Round Lake Sanitation's funds and effectively transferred the money to themselves in order to make a payment on their personal tax liabilities." (IRS' Memo. of Law at 14.)

In determining whether a person has the requisite dominion or control over property sufficient to qualify as the initial transferee, " 'courts [should] step back and evaluate a transaction in its entirety.' " *Danning v. Miller (In re Bullion Reserve of North America),* 922 F.2d 544, 549 (9th Cir.1991)(quoting, *Nordberg v. Societe Generale (In re Chase and Sanborn Corp.),* 848 F.2d 1196, 1199 (11th Cir.1988)). The uncontroverted documents submitted on these motions establish that either Gottlieb or the Mongellis were the initial transferees. The Debtors, Gottlieb's corporate clients, owed no tax to the IRS at the time he caused their funds to be delivered to the Mongellis' attorney in the form of a check payable to the IRS.[4] The Mongellis, by their attorney, directed that those funds be applied against the Mongellis' personal tax liabilities. Gottlieb and the Mongellis exercised dominion and control over the funds sufficient to qualify them as initial transferees. It is not necessary to resolve here which of them is the initial transferee. It is sufficient for these motions simply to conclude that the IRS is not.

**2.** *Section 550(b) Defense of a Subsequent Transferee*

Although the IRS is not the initial transferee, the Trustee may nevertheless recover from the IRS as a subsequent or "immediate or mediate transferee" of an initial transferee. 11 U.S.C. § 550(a)(2). However, the Trustee's right to recover post-petition transfers under § 550(a)(2) is limited by § 550(b), which prohibits recovery from a subsequent transferee who takes (1) for value, (2) in good faith, and (3) without knowledge of the voidability of the transfer. 11 U.S.C. § 550(b). The Trustee may not prevail if the IRS took the funds for value, in good faith and without knowledge of the voidable nature of the transfer. *In re Nordic Village, Inc.,* 915 F.2d at 1055.

Under § 550(b), "value" includes "satisfaction or securing of a debt." Value "is different from and does not mean value to the debtor; a natural reading of this section looks to what the transferee gave up rather than what the debtor received." **Lawrence P. King, Collier on Bankruptcy** ¶ 550.03[1] (15th ed. rev.1997). Since the IRS applied the funds to offset the Mongellis' personal tax liabilities to it, the "value" requirement is satisfied.

There is no meaningful distinction between the two remaining requirements of § 550(b), "good faith" and "without knowledge of the voidability of the transfer." *Gallant v. Kanterman (In re Kanterman),* 97 B.R. 768, 779 (Bankr.S.D.N.Y.1989), *aff'd,* 108 B.R. 432 (S.D.N.Y.1989). Good faith has been defined as "lack of actual knowledge of actual fraud" or "lack of knowledge of circumstances requiring further investigation." *Id.* Knowledge exists "if the transferee 'knew facts that would lead a reasonable person to believe that the property transferred was recoverable.' " *In re Nordic Village, Inc.,* 915 F.2d at 1055 (quoting *Smith v. Mixon,* 788 F.2d 229, 232 n. 2 (4th Cir.1986)).

Although "knowledge", as used in § 550(b)(1), is not defined by the Bankruptcy Code or its legislative history, "it does not .

---

**4.** The IRS was not listed as a creditor in either bankruptcy case.

mean constructive notice." *Smith*, 788 F.2d at 232. However, "knowledge" does include "actual knowledge" and "inquiry notice." *See, e.g., In re Kanterman*, 97 B.R. 768, 779 (supporting the inquiry-notice view); *Brown v. Harris (In re Auxano, Inc.)*, 96 B.R. 957, 965 (Bankr.W.D.Mo.1989)(supporting the inquiry-notice view).

The Eighth Circuit Court of Appeals held that "knowledge is a stronger term than notice, and we do not require a transferee to be a vigilant monitor for the creditors' benefit when he possesses no information suggesting that there is a fraudulent conveyance in the chain." *Brown v. Third Nat'l Bank (In re Sherman)*, 67 F.3d 1348, 1357 (8th Cir.1995). "If a transferee possesses knowledge of facts that suggest a transfer may be fraudulent, and further inquiry by the transferee would reveal facts sufficient to alert him that the property is recoverable, he cannot sit on his heals, thereby preventing a finding that he has knowledge." *Id.*

▆▆ The Trustee submitted an affidavit from Gottlieb asserting that Michael Tabak, Esq., an Assistant United States Attorney, was intimately involved in the negotiations that led to the pre-petition sale of the Debtors' assets and that Tabak "was at all times aware that the funds in [Gottlieb's] escrow account were corporate funds to be used for corporate purposes only." (Gottlieb Aff. at ¶ 6.) Tabak responded by an unopposed declaration stating that he was interested in seeing that the funds were used to comply with the criminal plea agreement involving the Mongellis, Round Lake Sanitation Corp. and Orange County Sanitation, Inc. (Tabak Decl. at ¶¶ 2, 3, 12.) However, he believed that the corporate bankruptcy cases would be dismissed prior to any payments being made pursuant to the plea agreement. (Tabak Decl. at ¶ 12.)

The incorrect belief by various parties to this transaction that the bankruptcy cases had been dismissed was created by Gottlieb's false statements. Gottlieb told Greenberg and Tabak that the cases would be dismissed. (IRS Decl., Ex. D at 6.) Shortly thereafter, Gottlieb told Greenberg that the bankruptcy cases had been dismissed. (IRS Decl., Ex. D at 6.) Greenberg then informed the Mongel-

lis' attorney of the dismissal of the bankruptcy cases.

The IRS had no reason to believe that the check it received came from bankruptcy estate funds or that the transfer was improper and voidable. The IRS Revenue Officers who processed Gottlieb's check submitted unopposed sworn statements that they had no knowledge of the voidable nature of the transfer or that the check represented property of a debtor in bankruptcy. (Titone Decl. at ¶ 6.) Thus, the IRS had no "actual knowledge."

The Trustee also argues that Tabak had sufficient notice of the avoidable nature of the transfer from which to make further inquiry. Even assuming that knowledge by Tabak could be imputed to the IRS, the Trustee could not recover from the IRS because Tabak had neither actual knowledge nor inquiry notice of the avoidable nature of the transfer. Tabak was told that the bankruptcy cases were going to be dismissed and believed that no payment would be made prior thereto. (Tabak Decl. at ¶¶ 11–12.) There was no reason for Tabak to assume that Gottlieb would lie and allow an unauthorized payment to be made from estate funds.

The Trustee relies upon *In re Nordic Village, Inc.*, 915 F.2d 1049 (6th Cir.1990), where the court found that a cashier's check bearing the crossed-out but legible notation "REMITTER: SWISS HAUS, INC." was sufficient to put the IRS on inquiry notice that the transfer was avoidable. *Id.* at 1056. He argues that a similar notation on Gottlieb's escrow-account check "put the IRS on notice that the transfer being made was clearly avoidable...." (Trustee's Memo. of Law at 12.)

The question thus presented is whether Gottlieb's check disclosed sufficient information as to the source of the funds to charge the IRS with inquiry notice. In *Nordic Village*, the unauthorized transfer to the IRS was made by cashier's check bearing the notation "REMITTER: SWISS HAUS, INC." In our case, "For Round Lake Sanitation" was written on the memorandum line of an ordinary personal check. The source of the funds was preprinted on the top of the

check—it read, "MICHAEL R. GOTTLIEB, ESQ." (with "Master Escrow" and his office address printed immediately below).

In *Nordic Village* the court noted that it was "not an ordinary business practice for corporate entities to pay one another's taxes." *In re Nordic Village, Inc.*, 915 F.2d at 1056. Upon receipt of a cashier's check disclosing the source of the funds (i.e., bearing the notation "REMITTER: SWISS HAUS, INC."), the IRS was placed on "notice that something might be wrong with accepting a check." *Id.* In our case, however, an ordinary personal check was drawn on an attorney's escrow account, and was accompanied by a transmittal letter indicating that it was to be used in connection with a particular offer-in-compromise. It is not unusual for the IRS to receive checks from attorneys or escrow agents in payment of their clients' tax liabilities. A memorandum-line notation on a personal check is not significant in determining whether the IRS should have been put on inquiry notice that the transaction was illegitimate or that something was wrong, particularly in light of the fact that 1) the check was drawn on an attorney's escrow account, and 2) delivered in connection with an offer-in-compromise.

Further, to hold otherwise would place upon the IRS a virtually impossible burden of inquiring into the source of funds for countless personal checks received from third parties. (IRS Memo. of Law at 25.) The IRS cannot here be charged with notice requiring further inquiry into the source of the funds it received. The IRS having also satisfied the "good faith" and "without knowledge" requirements, it's defense under Bankruptcy Code § 550(b) is thus established as a matter of law.

### IV.  CONCLUSION

The IRS has established by uncontroverted facts all of the elements necessary to sustain its cross-motion for summary judgment. The Trustee may not recover the transferred funds from the IRS because the IRS is not the initial transferee, and because it took the funds: (1) for value; (2) in good faith; and (3) without knowledge of the voidability of the transfer. Accordingly, the motion for summary judgment of the Plaintiff Trustee is denied and the cross-motion for summary judgment of the Defendant IRS is granted.

Settle an Order in conformity herewith.