In re RED DOT SCENIC, INC., Debtor.

**Angela Tese–Milner, as Chapter 7 Trustee,**

v.

**David Brune and Thomas Carroll, Defendants.**

No. 01 Civ. 7980(MBM).

United States District Court, S.D. New York.

March 20, 2003.

Anne–Miriam V. Hart, New York City, for Appellant.

Angela Tese–Milner, Law Office of Angela Tese–Milner, New York City, for Appellee.

## OPINION AND ORDER

MUKASEY, District Judge.

Thomas Carroll appeals from the Bankruptcy Court's order granting summary judgment to Angela Tese–Milner, the Chapter 7 bankruptcy trustee of Red Dot Scenic, Inc. ("Red Dot"), on her claim that four payments to Carroll from Red Dot's corporate checking account were fraudulent transfers that may be avoided by the trustee. For the reasons stated below, the decision of the Bankruptcy Court is affirmed.

### I.

The following undisputed facts are drawn from the Bankruptcy Court's opinion: In 1990, Carroll and David Brune became partners in Red Dot, a company that designed and constructed theatrical scenery. Red Dot was incorporated in 1994, and Carroll and Brune became sole, equal shareholders and officers of the newly formed corporation. By the end of 1995, Red Dot had incurred a $120,000 debt and Carroll, with the help of an office manager, implemented a plan to reduce the overall debt by approximately $56,000 during the course of 1996.

Despite Red Dot's improved financial situation in 1996, Carroll and Brune decided to end their business association. On December 10, 1996, they entered into a written agreement pursuant to which Brune agreed to pay Carroll $57,000 for Carroll's shares in Red Dot. In exchange for Carroll's resignation as an officer and director of Red Dot, the agreement required that Brune tender a $15,000 down payment and then pay the balance in seven installments. Carroll's shares were held by his attorney in an escrow account until full payment was received.

At the closing of the agreement, Brune gave Carroll a personal check in the amount of $15,000. From March 1997 through September 1997, Brune tendered four additional checks to Carroll totaling $18,000. However, unlike the first check, which was drawn from Brune's personal account, these checks were issued from Red Dot's corporate checking account. Red Dot received no consideration for these four payments.

On February 23, 1998, less than one year after each of the four transfers to Carroll, Red Dot filed a petition for reorganization under Chapter 11 of the United States Bankruptcy Code. The case was later converted to a Chapter 7 case.

Red Dot's Chapter 7 trustee commenced an adversary proceeding to avoid the conveyance of Red Dot's property to Carroll and recover that property pursuant to sections 548(a)(1) and 550(a)(1) of the Bankruptcy Code.[1] The trustee moved for summary judgment on the avoidance claim. In her summary judgment motion, the trustee contended that the $18,000 could be recovered from Carroll because he was an initial transferee of four payments from Red Dot's corporate account. Alternatively, the trustee argued that even if Carroll was an immediate or mediate transferee, his good faith defense under section 550(b) would fail as a matter of law. Carroll cross-moved for summary judgment, claiming that he was not an initial transferee as described by section 550(a)(1). Carroll argued instead that he was an immediate or mediate transferee who took for value, in good faith, and without knowledge of the voidability of the transfer.

The Bankruptcy Court for the Southern District of New York (Bohanon, B.J.) granted the trustee's motion for summary

---

1. Initially, the trustee also sued Brune. However, after Brune filed for personal bankruptcy, the claims against him were stayed and severed from this proceeding.

judgment on the ground that Carroll was an initial transferee under section 550(a)(1). Accordingly, the Bankruptcy Court found that the trustee was entitled to recover $18,000 from Carroll. Carroll appeals. This court has jurisdiction to hear Carroll's appeal under 28 U.S.C. § 158(a)(1).

## II.

Federal Rule of Bankruptcy Procedure 7056 applies Federal Rule of Civil Procedure 56(c) to summary judgment motions in bankruptcy proceedings. Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The court reviews the bankruptcy judge's grant of summary judgment *de novo* and views the facts in the light most favorable to the non-movant. *In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson, & Casey*, 130 F.3d 52, 55 (2d Cir.1997).

Section 548 of the Bankruptcy Code provides, in relevant part:

> The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—received less than a reasonably equivalent value in exchange for such transfer or obligation; and was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

11 U.S.C. § 548(a)(1) (2000). It is undisputed that there was a transfer of the debtor's property, that Red Dot did not receive reasonably equivalent value for the transfers, and that Red Dot was insolvent at the time of the transfers to Carroll based on the definition of "insolvent" in section 101(32) of the Code. Thus, the elements of section 548 have been met, and the trustee is authorized to exercise her avoidance power.

Once it is established that the trustee is entitled to avoid transfers under section 548, section 550(a) permits the trustee to recover from particular transferees. The section provides, in relevant part: "[T]he trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a) (2000). Although the Code imposes strict liability on "initial transferees" and "entit[ies] for whose benefit such transfer was made," section 550(b) protects transferees subsequent to the initial transferee who "take[ ] for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided." 11 U.S.C. § 550(b) (2000).

The question presented, then, is whether, based on the undisputed facts, Carroll was an "initial transferee" under section 550(a)(1) of the Bankruptcy Code. If Carroll was an "initial transferee," he is liable for the $18,000 he received from Red Dot. However, if he was not an "initial transferee" but rather a subsequent transferee, Carroll may assert a good faith defense under section 550(b). Because I agree with the Bankruptcy Court that Carroll was an "initial transferee" under section 550(a)(1), I affirm the Bankruptcy Court's grant of summary judgment in favor of the trustee and do not reach the question of

whether Carroll's good faith defense could survive summary judgment.

## III.

■ The Bankruptcy Code does not define the term "initial transferee." However, every circuit that has considered the issue, including the Second Circuit, has applied the "dominion and control" test explicated by the Seventh Circuit in *Bonded Fin. Servs. v. European Am. Bank*, 838 F.2d 890 (7th Cir.1988). *See, e.g., In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson, & Casey*, 130 F.3d 52, 57–58 (2d Cir.1997). In *Bonded*, the debtor (Bonded) sent a check to a bank payable to the bank's order with instructions to deposit the money into the personal account of a Bonded principal (Ryan). Although Ryan eventually used the funds deposited by Bonded to reduce his own debt to the bank, the Court found that the bank was not an initial transferee because it had no dominion over the money at the time it received the check. Rather, until Ryan instructed the bank to use the money to reduce Ryan's personal debt, "[the bank] was Ryan's agent for the purpose of collecting a check from Bonded's bank." *Bonded*, 838 F.2d at 893–94. As Ryan's agent, the bank, was not, in the Seventh Circuit's words, "free to invest the whole [amount] in lottery tickets or uranium stock." *Id.* at 894.

In the course of explaining that the bank was merely Ryan's agent immediately after the transfer and so was not an initial transferee, the *Bonded* Court stated hypothetically: "If the note accompanying Bonded's check had said: 'use this check to reduce Ryan's loan' instead of 'deposit this check in [Ryan's] account,' § 550(a)(1) would provide a ready answer. The Bank would be the 'initial transferee' and Ryan would be the 'entity for whose benefit [the] transfer was made.'" *Id.* at 892. Thus, in

applying the dominion and control test, the Court distinguished between a one-step transaction in which a debtor's check is paid directly to its principal's creditor and a two-step transaction in which the check is paid to the principal, who then pays his personal creditor. In the first situation, the creditor is the initial transferee. In the second situation, the situation that arose in *Bonded* itself, the principal is the initial transferee and the principal's creditor is a subsequent transferee. *See id.* at 894 ("So the two-step transaction is indeed different from the one-step transaction we hypothesized at the beginning of this discussion.").

The Bankruptcy Court in this case, relying on the hypothetical in *Bonded*, concluded that Carroll was the initial transferee. The Court reasoned that Brune, who, in contrast to Ryan, never deposited the money in his personal account, did not have "dominion and control" over the money. Carroll, on the other hand, who received four checks directly from the debtor, could invest the whole amount as he chose.

Carroll concedes that *Bonded*, which was embraced by the Second Circuit in *Finley*, controls the case at bar. However, Carroll takes issue with the Bankruptcy Court's application of *Bonded*. Carroll argues that, under the dominion and control test, a principal who, for his own benefit, causes a corporate debtor to make a fraudulent transfer, should be considered an initial transferee under section 550(a)(1). According to Carroll, when Brune used his power as a principal to divert Red Dot's assets to a personal creditor, he asserted dominion and control over the funds at issue, and should be held accountable for using those funds to pay a personal debt.

The Tenth Circuit squarely rejected Carroll's argument in a case that is, for the

purposes of applying the dominion and control test, indistinguishable from the present case. In *Rupp v. Markgraf*, 95 F.3d 936 (10th Cir.1996), the principal stockholder of a corporation directed a bank to pay his personal creditors out of corporate funds. After the corporation filed for bankruptcy protection, its trustee brought a fraudulent transfer action against the shareholder's creditors, who disclaimed liability under section 550(a) on the ground that either the bank or the shareholder was the "initial transferee." Rejecting the creditors' argument, the Court found that the bank that generated a cashier's check was not an initial transferee because it was at most a mere conduit and never had control of the funds. More important for our purposes, the Court found also that the principal stockholder was not the initial transferee on the ground that he never exercised control over the funds after the transfer. According to the Court, as in the hypothetical posed in *Bonded*, the transaction at issue was a one-step transaction whereby the principal's creditors received money direct from the bankrupt corporation. *Rupp*, 95 F.3d at 940 (finding that the shareholder never had control over the funds under the *Bonded* approach because the funds were never deposited into the shareholder's personal account). Dismissing the argument that a principal should be held liable for causing a corporation to settle his personal debts, the Court reasoned:

> It is clear that the *Bonded* court's discussion of dominion and control refers to dominion and control over the funds af-

ter the disputed transfer, not dominion and control over the transferor before the transfer. This point is illustrated by the fact that the court in *Bonded* presented two sets of contrasting facts, the actual facts before the court and a hypothetical situation. As discussed above, the court concluded that the result would be different in each case. Yet in both cases the principal exercised control over the transferor prior to the transfer of funds and caused the transferor to make transfer.

*Id.* Based on its interpretation of *Bonded*, the Court concluded that "[t]he extent to which a principal has de facto control over the debtor before the funds are transferred from the debtor, and the extent to which the principal uses this control for his or her own benefit in causing the debtor to make a transfer, are not relevant considerations in determining the initial transferee under § 550." *Id.* at 941. Here, the Court followed both the Eleventh Circuit's and the Bankruptcy Appellate Panel for the Ninth Circuit's interpretation of section 550(a)(1). *See Gen. Elec. Capital Auto Lease, Inc. v. Broach*, 185 B.R. 801, 809 (9th Cir. BAP 1995) (finding "that the principal of a corporate debtor does not become a 'transferee' by the mere act of causing the debtor make a fraudulent transfer"); *In re Chase & Sanborn Corp.*, 904 F.2d 588, 599 (11th Cir.1990) (deciding that a bank was the initial transferee of loan payments made by a debtor on behalf of its principal where those payments were made directly to the bank).[2]

---

**2.** The Bankruptcy Appellate Panel for the First Circuit's recent decision in *In re Anton Noll, Inc.*, 277 B.R. 875 (1st Cir. BAP 2002) is also consistent with *Rupp*. Like *Rupp*, that case involved a corporate principal who used corporate funds to pay off a personal debt. Unlike in *Rupp*, however, the principal caused to debtor to issue a check payable to the order

of "cash." Thus, the Court concluded that the case involved a two-step transaction under *Bonded*. *See id.* at 880–81 ("Because the check was payable to 'cash,' ... [the principal] obtained legal ownership and possession of the Debtor's funds upon receipt of the check.").

The structure and purpose of section 550(a)(1) confirm that a principal does not become an initial transferee simply by using his control over corporate assets to effect a fraudulent transfer. Section 550(a)(1) imposes liability on *both* initial transferees and beneficiaries of fraudulent transfers. From that starting point, the *General Electric* Court reasoned:

> [I]f the distinction between an initial and a subsequent transferee turns on whether the party benefitting from the transfer "forced" the debtor to make the transfer, then the scope of liability under section 550 is unduly narrowed. Section 550(a)(1) subjects to strict liability not only the initial transferee, but also "the entity for whose benefit such transfer was made." The party who forces a debtor to make a transfer is almost always "the entity for whose benefit such transfer was made," and thus is generally always subject to strict liability. Yet Congress intended to make initial transferees also strictly liable for the transfer. . . . "The implication is that the entity for whose benefit the transfer was made is different from a transferee, immediate or otherwise."

*General Electric*, 185 B.R. at 809 (quoting *In re Bullion Reserve of N. Am.*, 922 F.2d 544, 548 (9th Cir.1991)). The distinction drawn in the statute between beneficiaries and initial transferees thus strongly indicates that, as a general rule, beneficiaries and initial transferees are separate parties to a fraudulent transfer. *See Sec. Investor Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 314 (Bankr.S.D.N.Y.1999) ("As a general rule, initial transferees and enti-

ties for whose benefit the initial transfer was made are mutually exclusive.").[3]

Where, as here, a corporate principal directs debtor to transfer assets to a third party in satisfaction of a personal debt, the policy underlying fraudulent transfer law counsels strongly against departing from the general rule that beneficiaries and initial transferees are separate parties. Congress chose to hold initial transferees, in addition to beneficiaries, strictly liable for fraudulent transfers because, as the Seventh Circuit explained, "[t]he initial transferee is the best monitor; subsequent transferees usually do not know where the assets came from and would be ineffectual monitors if they did." *Bonded*, 838 F.2d at 892–93. By imposing strict liability, and thus a burden of inquiry, on initial transferees, the Bankruptcy Code protects creditors from last-minute depletions of the value of the bankruptcy estate, which in turn lowers the cost of credit.

If corporate principals who direct debtor corporations to transfer assets to personal creditors were deemed "initial transferees" in addition to beneficiaries, the purpose of section 550(a)(1)—*i.e.*, imposing a burden of inquiry on parties dealing directly with debtors—would be undermined. The principal's personal creditors would have no incentive to inquire into the source of repayments even when they receive checks drawn on corporate accounts. Thus, in the present case, if Brune were the initial transferee, Carroll would have no incentive to find out why the source of the loan repayments had changed; rather, because he would not be strictly liable under sec-

---

**3.** As appellant points out, one can imagine potential exceptions to this general rule, such as, for example, cases in which a principal pays himself a bonus on the eve of bankruptcy. In that situation, however, unlike in the present situation, the dominion and control test is easily passed, because the transferee is in no sense a "mere conduit." The issue here is whether a principal who forces a corporation to make a fraudulent transfer directly to a personal creditor is an initial transferee, not whether a principal who simply transfers money from a corporation to himself is an initial transferee.

tion 550(a),[4] he could simply accept payments from the nearly bankrupt Red Dot.

Like the principal in *Rupp* as well as the principal in the *Bonded* hypothetical, Brune caused the debtor corporation to transfer money direct to a personal creditor. There was no "intermediary step between the Debtor's issuance of the check and the [creditor's] receipt of the funds." *Anton Noll,* 277 B.R. at 882. Although Brune is strictly liable under section 550(a) because he was the party for whose benefit the transfer was made, Carroll was the initial transferee. Thus, he too is strictly liable under the section. An alternative result would be inconsistent with the *Bonded* framework and would contravene the structure and purpose of section 550(a).

Recognizing that *Rupp* cannot be meaningfully distinguished from this case, Carroll contends that the rule in *Rupp*—that a principal does not become an initial transferee merely by causing a corporation to satisfy a personal debt—has not been accepted in this circuit. In support of this claim, Carroll cites *In re Orange County Sanitation, Inc.,* 221 B.R. 323 (Bankr.S.D.N.Y.1997). In that case, which is no more than persuasive authority here, the Mongellis, who were officers and shareholders of two debtor corporations, negotiated a compromise with the IRS in settlement of their personal tax liabilities. Separately, prior to their bankruptcy petitions, the corporations agreed to sell their assets to a third-party. On June 30, 1995, a portion of the sale proceeds was remitted to the debtors' attorney (Gottlieb), who deposited the money in his attorney escrow account. On August 16, 1995, Gott-

lieb wrote a check to the IRS for $106,286.15, a fraction of the amount held in escrow, although the debtor corporations owed no money to the IRS. Gottlieb then forwarded the check, which bore the notation of one of the debtor corporations, to the Mongellis' attorney, Kevin Flynn. Before making the transfer, however, Gottlieb misinformed another attorney for the debtors that the bankruptcy case had been dismissed. That attorney, in turn, passed on the false information to Flynn, who proceeded to send the check to the IRS with a letter stating that the check was to be used as partial payment of the Mongellis' personal tax liability. *See id.* at 326. The trustee sought to recover $106,286.15 from the IRS. Based on the undisputed facts, the bankruptcy court concluded that the IRS could not be deemed an initial transferee under section 550(a); rather, either Gottlieb or the Mongellis was the initial transferee.[5] *Id.* at 328.

The purpose of this detailed summary of *Orange County* is to show that the facts of that case were quite different from those in *Rupp,* and, far from supporting appellant's argument that Brune was the initial transferee in this case, *Orange County* has little bearing here. Although the bankruptcy judge in *Orange County* stated broadly that "[t]he requisite dominion or control is present when a corporate officer or shareholder causes the corporation to make payments on his personal debts or for his personal benefit," *id.* at 327, the Court qualified that statement by explaining that "[w]hen a corporate officer *receives a check* drawn on a corporate ac-

---

4. As a subsequent transferee, Carroll also could not be "the entity for whose benefit" the transfer was made. *See Bonded,* 838 F.2d at 895 ("[A] subsequent transferee cannot be the 'entity for whose benefit' the initial transfer was made.").

5. The Court did not need to decide which party was the initial transferee, but only that the IRS was not the initial transferee. *Id.* at 328.

count and uses it to pay personal debts, the corporate officer ... is the initial transferee," *id.* (emphasis added). In *Orange County,* like in *Bonded* but unlike in *Rupp,* at least one party besides the principal's personal creditor had some degree of control over the funds at issue before the personal creditor did. First, Gottlieb deposited the proceeds of the asset sale into his escrow account. Although Gottlieb was presumably an agent of the debtors when he initially held the money in escrow, he apparently cast off that agency when, in violation of 18 U.S.C. § 1001 (2000), he knowingly made false statements in connection with the debtors' bankruptcy case as part of a scheme to transfer money from the debtors to himself. *See id.* at 326 n. 2. Second, Flynn, acting on behalf of the Mongellis (but not the debtor corporations), took possession of the check and delivered it to the IRS along with instructions to reduce the Mongellis' personal tax liability. Thus, *Orange County* involved a transaction with several steps. The funds at issue were not transferred direct from a corporation to a personal creditor but from a third party buyer to an unscrupulous attorney for the debtors, from that attorney to an attorney for the principals, and finally from the principals' attorney to the personal creditor. Here, in contrast, Red Dot funds were transferred direct to Carroll; no agent of Brune had any degree of control over the funds in the interim.

*Orange County* is distinguishable from this case and from *Rupp* insofar as Gottlieb and the Mongellis each exercised some control over the money eventually paid to the IRS. That is not to say that they exercised sufficient control over the check to be deemed initial transferees. Because Gottlieb held the funds in escrow and the Mongellis held a check made out to the IRS, it appears that neither had the right to invest the money at will. Thus, it is possible that, unlike Ryan in *Bonded,* Gottlieb and the Mongellis were not initial transferees.[6] *See Anton Noll,* 277 B.R. at 879 (" 'Dominion and control' refers to legal, as opposed to mere physical possession of the property transferred."). Yet whether *Orange County* was rightly decided is immaterial here. Brune, unlike Gottlieb and the Mongellis and like the principal in *Rupp,* exercised no control whatsoever over the funds at issue once they were transferred; therefore, he was not an initial transferee. *Orange County,* rightly decided or not, compels no different result.

█ Carroll appears to argue also that where an individual such as Brune dominates a corporation, he should be deemed an initial transferee even if the *Rupp* approach is otherwise followed. Whatever the merits of this argument, Carroll did not raise it in the Bankruptcy Court. The argument has been waived. *See Medforms, Inc. v. Healthcare Mgmt. Solutions, Inc.,* 290 F.3d 98, 109 (2nd Cir.2002). In any event, courts applying the *Bonded* test have made it clear that "whether the principal directed the company's funds 'appropriately or inappropriately is not relevant

---

**6.** The counterargument would be that Gottlieb converted the money in his escrow account to his own use and that Flynn, an agent of the principals with no authority to act on behalf of the debtors, took possession of the check and directed the IRS to reduce the Mongellis' personal tax liability. Further, the IRS received the check from an agent of the Mongellis—indeed, an agent who reasonably believed that the bankruptcy case had been dismissed—rather than from a corporate principal, and was therefore in a poor position to monitor the debtor's disbursement of funds. Thus, as discussed above, *Orange County* is distinguishable from a case like *Rupp* in which the principal simply causes a corporation to pay off a personal debt directly from a corporate account.

to the question [of] whether he or she is an initial transferee under § 550.'" *Anton Noll,* 277 B.R. at 881–82 (quoting *In re Southeast Hotel Prop. Ltd. P'ship.,* 99 F.3d 151, 156 (4th Cir.1996)). By the same token, if a principal utterly dominates a corporation, he may be forced to assume a corporation's liabilities under an alter ego theory or he may be otherwise liable for breach of fiduciary duty. However, he does not, simply by virtue of such domination, become an initial transferee. Carroll was the initial transferee in this case, notwithstanding Brune's control over the debtor corporation's funds.

\*    \*    \*    \*    \*    \*

For the reasons stated, the Bankruptcy Court's decision is affirmed. The trustee is entitled to recover from Carroll the $18,000 Carroll received direct from Red Dot's corporate account.